[Civ. No. 12412.   First Dist., Div. One.   July 24, 1943.]

J. W. CHURCHMAN, Respondent, v. COUNTY OF SO-
NOMA et al., Appellants.

Barrett & McConnell and A. Dal Thomson for Appellants.

Geary & Tauzer and John H. Moskowitz for Respondent.

KNIGHT, J.—Plaintiff sued the county of Sonoma, its road commissioner, and the members of its board of supervisors to recover damages for personal injuries of a permanent nature sustained by him in attempting to extricate himself from his capsized automobile which had partly overturned into a drainage ditch along side of the highway, as the result of the defective and dangerous condition of the edge of the pavement. The cause was tried before the court sitting without a jury, and judgment was rendered against

the county and the road commissioner, from which they have appealed.

The judgment is based upon findings to the effect that the northerly side of the paved roadway at the place of the accident was in a dangerous and defective condition, in that the pavement was deprived of lateral support to the extent of rendering it incapable of carrying the weight of a motor vehicle; that the failure of the lateral support was caused by erosion of the south bank of a ditch constructed along the edge of the pavement through and along which storm and drainage waters were conveyed; that such dangerous and defective condition existed for many months prior to the accident, and that appellants were aware of such condition but did not remedy the same, nor place any signs or barriers on the road to warn the motoring public of its dangerous and defective condition; that on account of such dangerous, defective and generally unsafe condition the edge of the pavement underneath the wheels of respondent's automobile gave way, causing the automobile to tip over into the drainage ditch; "That as a direct and proximate result of the dangerous and defective condition of said highway as hereinbefore described and the failure and neglect of said Defendants County of Sonoma and said County Road Commissioner, and each of them, for a reasonable time after acquiring knowledge and receiving notice of the dangerous, hazardous and defective condition thereof to remedy the same and the failure and neglect of said Defendants for a reasonable time after acquiring knowledge and receiving notice of the dangerous and hazardous and defective condition of said highway hereinbefore described the said Plaintiff received severe injuries consisting of the following: A fracture of the right temporal bone, a fracture of the right clavicle, concussion of the brain, two fractured ribs and severe nervous and mental shock and strain, all of which has rendered and does now render the said Plaintiff lame, sick, sore and disabled; that said injuries received by the Plaintiff are permanent in character and by reason thereof the Plaintiff has been damaged in the sum of Twenty-five Hundred Dollars ($2500.00)." The trial court further found that in no manner connected with the accident was plaintiff guilty of contributory negligence.

Appellants make no claim that the evidence is insufficient to support the trial court's findings as to the dangerous and defective condition of the highway, nor do they assail the

soundness of the finding that they were guilty of negligence in failing to remedy such condition or to give suitable warning of the existence thereof to the motoring public; but they contend that since plaintiff's injuries were sustained in attempting to extricate himself from his car after it had toppled over into the ditch, the trial court was in error in holding that either the dangerous and defective condition of the roadway or their negligence in failing to repair the same or give warning thereof was the proximate cause of such injuries. In other words, it is their theory that the act of respondent in attempting to extricate himself from the overturned car broke the chain of causation created by their negligence and initiated a new chain of events for the consequences of which they were not responsible. They further contend that in any event respondent was operating his automobile over and along the highway in a manner which constituted contributory negligence as a matter of law. There is no merit in any of the foregoing contentions.

The accident happened in the afternoon during the dry season of the year on a road known as the Lewis road, which lies back of Santa Rosa and leads to Healdsburg. The traveled portion of the road varied in width from 14½ to 15 feet, and was paved with a so-called California pavement approximately two inches in thickness and consisting of a combination of macadam and tar or some similar substance, and gravel and crushed rock. Along the northerly side of the road and running parallel with and adjacent to the paved portion was a dirt ditch two to three feet deep and from three to six feet wide, which had been constructed to take care of the storm and drainage waters, and several months prior to the accident the waters had washed away the lateral support of the edge of the pavement. The respondent, J. W. Churchman, an elderly man, was driving westerly in a Studebaker sedan. His wife was riding on the front seat with him. As they approached the place of the accident they met a car traveling in the opposite direction. It was being driven by a Mr. Barham, and he was accompanied by a neighbor named Mrs. Laumann, who lived nearby. Both cars were traveling at a slow speed of eight or ten miles an hour, and as they passed each other with a clearance of about a foot or a foot and a half between them the right side of the pavement under the wheels of respondent's car gave way and the car lurched and then toppled over into the ditch, throwing respondent violently against the steering wheel. The car did not fall flat

on its side, but was left teetering at an angle of about 45 degrees. After first ascertaining that his wife was not injured, respondent tried to get out of the car, but could not do so because he was unable to hold the door open. Immediately after passing respondent's car Barham swung back into the middle of the roadway to make a right turn off the Lewis road on to a side road leading to Mrs. Laumann's home, and looking into the rear vision mirror of his car he saw respondent's car topple over into the ditch. Barham knew respondent, and he stopped his car at once and went back to help extricate respondent and his wife from their car. As Barham reached the car respondent and his wife were still trying to get out. Barham opened the left front door and asked if they were hurt, and they replied they were not. Barham then told Mrs. Churchman to wait until he could get Mr. Churchman out and that he would then help her out. Barham then held the door open and steadied the car while respondent climbed out on the running board. He stood up partly on the running board and partly on the body of the car, and was about to jump down to the pavement; but the edge of the running board was more than waist high above the pavement, and on account of the distance and respondent's advanced age Barham suggested that respondent "come down around the front of the car and slide over the hood towards the low side." Respondent agreed but instantly slipped and fell, his head striking hard on the pavement, knocking him unconscious, and his body slid down underneath the car. There was imminent danger that the teetering car would tilt back and crush him, so Barham directed Mrs. Laumann, who was standing nearby, to steady the car while he pulled respondent from beneath it. Mrs. Churchman was then extricated from the car and respondent was taken to the hospital where it was found that he had sustained the injuries above mentioned.

The legal doctrine governing cases such as this is well stated in 38 American Jurisprudence at page 736 as follows: "Where a person has been put in sudden peril by the negligent act of another, and, in an instinctive effort to escape from that peril, either suffers injury himself, or does injury to a third person, the negligent act is the proximate cause of the injury, and it is immaterial that under different circumstances he might and ought to have seen and avoided the latter danger. The intervening attempt to escape does not supersede the negligent act as the proximate cause of the

injury, since it is prompted or set in motion by the negligent act. . . . Accordingly, one whose negligence creates a condition which another reasonably apprehends is a source of danger to himself is liable to the latter for an injury received by the latter in a natural and reasonable attempt to escape from the apprehended peril. Thus, if a traveler leaps from his carriage because of its near approach to a dangerous defect in the highway, or if a passenger in a railroad train, placed by the carrier's negligence in imminent peril, endeavors to escape it by leaping from the car, and thereby sustains an injury, he may, if there is no contributory negligence on his part, recover for the injury, although had he remained in the carriage or car, he would not have been injured. . . . In order for the general principle stated above to be applicable, however, the act must have been the result of fear. Moreover, the principle does not apply to preserve a cause of action unless the plaintiff was in a position of peril, either actual or apparent, caused by the negligence of the defendant.''

In the present case the facts show beyond question that by reason of appellants' negligence respondent and his wife were placed in a perilous situation, or at least in a position in which imminent peril to them was reasonably apprehended; and that while respondent was attempting to escape from such peril and from the dangers which one in his position reasonably could anticipate he was injured. Therefore, the case falls clearly within the legal doctrine above quoted.

Appellants argue that respondent was not in a perilous situation, and in this connection they say that ''there is no conceivable reason why the plaintiff could not have remained seated there for an indefinite length of time had he so desired.'' The fallacy of this argument is at once apparent. Here was an elderly man and his wife trapped in a closed automobile which had overturned into a ditch on a country road, and according to the positive testimony of Barham the car was teetering. Respondent tried to get out of it through his own efforts, but was unable to do so, and there was no way he could drive his car out of the ditch while it was teetering at an angle of 45 degrees. In that situation respondent might well have believed that if the car did fall on its side he or his wife, or perhaps both, would be injured thereby, or that the car would catch on fire when it fell. It would seem idle to say, therefore, that respondent was not justified in apprehending that he was in a perilous situation. He had to get out of the car some time, and obviously to have re-

mained in the car, under the existing circumstances, after Barham came to his aid, would have been contrary to common sense.

Appellants also state that "there was no excuse for the plaintiff to sustain these injuries in the simple act of leaving the automobile, even under the method adopted by him"—that he "had an easy and simple course to adopt" by following the suggestion of Barham; and that by doing so he could have "reached the ground upon the right hand or low side of the car, without any risk of injury at all." The testimony given by Barham at the trial shows, however, that respondent agreed to his suggestion, but instantly fell. In any event, it is wholly immaterial whether or not he was attempting to follow Barham's suggestion when he fell, for the reason that the question of whether he failed to exercise due care in attempting to extricate himself from the overturned car was a question of pure fact for the trial court's determination, and the evidence amply supports its finding that respondent was in no way negligent or careless.

Numerous cases have been cited by appellants in furtherance of their theory that the act of respondent in seeking to extricate himself from the disabled automobile initiated a new chain of causation which brought about "a second accident"; but as shown by the analysis of those cases in respondent's brief the factual situations therein clearly differentiate them from the present case. Most of them deal with situations in which the negligent act of a third party intervened between the negligent act of the defendant and the plaintiff's injuries; others involve successive accidents wherein the act of a third party intervened; and another line of cases involves the element of intoxication, that is, where a drunken man has sustained injuries after having been ejected from a train, or where he has been injured after becoming intoxicated by reason of the sale of liquor to him by the defendant. The case upon which appellants seem particularly to rely is *Johnson* v. *Union Furniture Co.*, 31 Cal.App.2d 234 [87 P.2d 917], but a glance at the decision therein shows that factually it bears no resemblance to the present case; therefore it is not here controlling.

■ Appellants' contention that respondent was operating his car in a manner constituting contributory negligence as a matter of law is based mainly upon respondent's testimony that he was familiar with the highway and that in travelling

over it on several other occasions he had observed holes and depressions therein which had been filled with dirt. The evidence definitely shows, however, that the dangerous and defective condition of the edge of the pavement which gave way under respondent's car was not apparent to one driving along the road. The erosion of the soil was underneath the pavement, and the dangerous condition of the pavement was revealed only by an inspection of the ditch and the subsurface. As one witness described it, a person walking along the road would not "know it was undermined because you couldn't see it. The only way you could see it would be to get down in the ditch." Clearly, therefore, in the absence of any warning signs along the highway respondent had the right to assume that the entire paved portion of the road would be strong enough to support the weight of an automobile.

Appellants argue also that there was no reason why respondent should not have stopped his car to let the Barham car pass. It will be noted, however, that this was a regular two lane highway along which no signs or other markings were displayed warning motorists against travelling along the edge of the highway, nor were there any physical conditions present indicating that any of the paved portion of the road was dangerous. Respondent was justified in assuming, therefore, that the two automobiles could pass abreast in safety; and the evidence shows that they would have done so with a clearance of about a foot and a half between them had the edge of the pavement not crumbled underneath the right wheels of respondent's car. The remaining points urged by appellants under this heading have less merit than those already discussed, and therefore need not be given special attention.

The cause of action against the road commissioner is based on the provisions of a statute which requires proof that "the injury sustained was the *direct and proximate* result of such defective or dangerous condition" (Stats. 1919, p. 756; Deering's General Laws, Act 5618; italics ours); and in his behalf it is contended that the evidence herein does not measure up to that standard of proof. However, as the trier of the facts, the trial court expressly found that respondent's injuries were sustained "as a *direct and proximate* result of the dangerous and defective condition of said highway" (italics ours); and it is our opinion that the circumstances

attending the accident were such that no other reasonable conclusion could have been reached.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied August 23, 1943, and appellants' petition for a hearing by the Supreme Court was denied September 20, 1943.