[Civ. No. 15281. Second Dist., Div. One. Oct. 22, 1946.]

JAMES D. O'NEAL, JR., Respondent, v. KELLY PIPE COMPANY (a Corporation) et al., Appellants.

Lyndol L. Young for Appellants.

John A. Gilligan and George H. Pratt for Respondent.

WHITE, J.—This is an appeal from a judgment in favor of plaintiff entered upon the verdict of a jury in an action for damages for personal injuries. Defendants also appeal from an order denying their motion for judgment notwithstanding the verdict.

Plaintiff's injuries were sustained when the vehicle in which he was riding struck some 6-inch steel pipe which projected from the rear of a truck and trailer owned by defendant Kelly Pipe Company and operated by defendant James W. Lewis. The charge of negligence lay in the asserted carelessness of the driver in failing to have lights burning at the rear of the load of pipe. Defendants contended that the lights were burning at the time of and before the accident, or if they were not burning, such defect was not due to the negligence of the driver. Defendants further contended that the accident was

unavoidable; that it was due solely to the negligence of plaintiff's father, who was driving the automobile in which plaintiff was riding; that plaintiff's father was guilty of contributory negligence and that such contributory negligence was imputed to plaintiff by reason of the fact that they were engaged in a joint venture.

Mr. O'Neal, Sr., father of plaintiff, testified that on December 11, 1944, he was driving his 1939 Chrysler sedan north on the Ridge Route about seven miles south of Bakersfield. The car was towing a trailer. Mr. O'Neal was engaged in the occupation of delivering trailers and carrying passengers obtained through a travel bureau from Los Angeles to Portland, Oregon. With him in the front seat were his son and a Mrs. Griffith, who was seated between the two men. There were also two women passengers in the rear seat and one in the trailer. Shortly before the accident, at about 8 o'clock in the evening, they stopped to get gasoline and clean the windshield at a service station on the left-hand, or westerly, side of the road. The witness testified that the accident occurred after they had left the service station and had traveled about 300 feet in a northerly direction. As to the happening of the accident he testified:

"Q. What was the first indication you had, if any of the presence of something else northbound on the highway? A. The first thing I noticed was the pipe that took the emblem off of the front of the radiator.

"Q. Just prior to the time that you noticed the end of the pipe did you see any lights on at all? A. I seen no lights or anything.

"Q. About how fast were you driving at that time? A. Well I would say approximately between 25 and 27 miles an hour. I hadn't even got out of or shifted into high. I was still in second. . . .

"Q. What happened then when you saw this pipe take off the emblem on top of your radiator?

"A. Well, I tried to swerve the car to the left, dodge where I seen it was, and then I applied my brakes at the same time, but the two kept moving together so I hollered, . . . the pipe came through the windshield. . . .

. . .

"Q. Did you see at that time immediately after the impact, did you see any lights on the back end of that dolly? A. No, sir."

The witness further testified that immediately after the accident he got out of his car, sent a man to the rear to flag traffic, and went on to the truck, which was parked 150 to 200 feet ahead of the car; that when he got there he saw the defendant truck driver "between his load of pipe and the dolly trying to connect up the wires that carried the lights back to the back end of the truck. . . . He seemed to have some trouble with his connection, where his lights connected up. . . . I said, 'This is a high time to be connecting those lights up, after you have practically killed somebody.' And he didn't say anything at first. He never mentioned anything. I said, 'You are working frantically to get them burning before the police arrive.'

"Q. All right. What did he say? A. Well, he never said much of anything that I remember, at all."

Mrs. Griffith, who was riding in the front seat between plaintiff and his father, testified that "the fog was quite dense at the scene of the crash and suddenly a dark object loomed up in front of us" at an estimated distance of 20 feet; that she saw no lights of any kind.

A Mrs. Butler, who lived in an auto court on the west side of the highway, testified that she heard the crash, and from her door saw the Chrysler automobile 150 to 200 feet up the road to the north; that she could see a taillight on the trailer hauled by the automobile; that she reached the scene of the accident about two minutes after the crash and then returned to the house to call an ambulance; that while at the scene of the accident she looked to the north and saw no taillights; that she did not see any one who identified himself as the driver of the truck; that at the scene she saw only a man and a woman in addition to the injured man. She also testified that the filling station operated in connection with the auto court closed at around 7 o'clock in the evening (the accident occurred at 8 p. m. or later); that there was another filling station about a half-mile further south, but she did not know whether it was open at the time of the accident.

The defendant driver testified that the truck itself was equipped with six rear lights; that the bed of the trailer was similarly equipped; that the light circuit of the trailer or "dolly" upon which the load of pipe was carried was connected to the truck lighting system by a plug and socket; that about fifty miles from the scene of the accident he attached four red lights (connected to the "dolly" system by plug and

socket) to the rear end of the load of pipe; that these lights were held in place on the pipe by clamps and bolts; that he inspected them and saw that they were burning properly. The pipe being hauled was 50 feet long and projected to the rear of the "dolly" 16 to 18 feet. He also inspected the lights about 10 miles from the scene of the accident when he stopped to cool his motor. He further testified that upon feeling the impact, which drove one pipe forward 6 or 8 feet past the cab, he brought the truck to a stop and with his flashlight ran back south of the Chrysler to flag traffic; that he did not stop at the Chrysler or talk to any one. He testified that his lights were on when he got out of the truck and denied *in toto* the testimony of Mr. O'Neal, Sr., as to his attempting to fix the lights before the officers arrived. Defendant Lewis further testified that the lights on the pipe were so constructed as to project a white beam on the pavement which he could see through his left rear-view mirror; that prior to the impact he had been driving with his head in the left-hand window and had observed, not more than two minutes before the accident, that the "pipe lights" were on.

Appellants urge that the evidence is insufficient to support the verdict and judgment, upon the grounds (1) that the sole proximate cause of the accident was the negligence of Mr. O'Neal, Sr., driver of the Chrysler automobile; (2) that plaintiff was guilty of contributory negligence; and (3) that "there is no substantial or credible evidence" of negligence on the part of defendants. The arguments of appellants in this regard, however cannot prevail against the firmly grounded rule that when a judgment is attacked as being unsupported by the evidence, the power of an appellate court begins and ends with a determination as to whether or not there is any substantial evidence, contradicted or uncontradicted, which will support the verdict rendered by the jury. (*Arundel* v. *Turk,* 16 Cal.App.2d 293, 295 [60 P.2d 486]; *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427 [45 P.2d 183].)

Appellants refer to the testimony of O'Neal, Sr., that the impact occurred two or three hundred feet down the road from the gasoline station, and therefrom argue that had O'Neal, Sr. looked as he pulled out or prepared to pull out of the station into the highway he would have seen the truck as it passed the station. Appellants also contend that the "undisputed" evidence shows that the headlights were not burning on the Chrysler automobile. Contributory negligence on the

part of plaintiff is predicated upon his asserted failure to look for approaching vehicles as the car entered the highway from the station and his failure to warn his father that the lights were not burning on the Chrysler. The answer to these contentions is that they are factual and the jury by its verdict found against them. The distance from the station to the point of the accident and the speed of the respective vehicles were matters of estimate by the witnesses. Obviously the truck had already passed when the Chrysler entered the highway. The contention that the lights of the Chrysler were not burning is based solely on the testimony of the defendant truck driver that he did not see the lights of the Chrysler as it came up behind him. At another point in his testimony, however, he stated that he had looked in his rear-view mirror "within a couple of minutes" before the accident occurred, but that he was not looking in the mirror at the moment of the impact. There is therefore no foundation for appellants' claim that the "undisputed" evidence showed that the Chrysler lights were not burning. The attempt to predicate negligence as a matter of law upon the fact that there were no brakes upon the trailer hauled by the Chrysler automobile cannot be sustained, because the evidence would warrant the conclusion either that the speed of the Chrysler was not in excess of the limit prescribed in such a situation or that the condition of the brakes was not the proximate cause of the accident. Other contentions of appellants as to the effect of the evidence are subject to similar infirmities. No useful purpose would be served by further discussion of appellants' contentions with respect to the effect or value of the evidence. The testimony as to the main question, whether the lights were burninng on the pipe, was in direct conflict. This conflict was resolved against defendants by the verdict of the jury.

Appellants next assert that there is no substantial or credible evidence to show negligence upon their part, and in support thereof argue, in effect, that the jury was bound to believe the testimony of Lewis, the driver, that the lights were in good order when he first turned them on, still in good order when he stopped to cool his motor 10 miles from the scene of the accident, and were still burning when he checked them through his rear-view mirror about two minutes before the accident took place. It must also be conceded that the lights were burning when they were inspected by highway patrol officers who came on the scene in response to a radio call a few minutes after the accident. From this it is argued that the

undisputed evidence shows that the defendant driver exercised due care to see that the lights were burning; that the liability of defendants is based not upon the asserted fact that the lights were out, but upon their failure to use due care to keep them burning. From this premise appellants proceed to devote several pages of their brief to the weaknesses in plaintiff's evidence and the strength of the defendants', as to the disputed question of whether the pipe lights were burning. Further, in effect, appellants would have this court hold that defendant Lewis' testimony must be accepted as true, because it was "clear, positive and uncontradicted." (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868].) It must be held, however, that there was sufficient substantial evidence to go to the jury on the question of whether the lights were burning, and in such a situation, the further question of the sufficiency of defendants' proof that ordinary care was used to keep them burning was likewise a question of fact for the jury. (*Ellison* v. *Lang Transportation Co.*, 12 Cal.2d 355, 358 [84 P.2d 510]; *Brooks* v. *Bailey*, 40 Cal.App.2d 310, 315 [104 P.2d 854]; *Takahashi* v. *White Truck etc. Co.*, 15 Cal.App.2d 107, 109 [59 P.2d 161].) As was said by this court in the last-cited case, "There was evidence sufficient to require the decision of the jury upon the alleged violation of sections 99, 106 and 110 of the California Vehicle Act (now sections 618, 621 and 626 of the Vehicle Code, Statutes of 1935, p. 93) under which the trailer was required to carry a red tail light and red load lights on the trailer load. The failure to have such lights showing would have constituted *prima facie* evidence of negligence. If they were not showing at the time of the accident, the sufficiency of the defendant's proof that it had exercised ordinary care to keep them lighted presented a question of fact for the decision of the jury." Negative testimony as to the absence of lights has not infrequently been held sufficient to sustain findings of negligence on the part of automobile drivers. (*Takahashi* v. *White Truck etc. Co., supra,* citing *Carswell* v. *Pacific Greyhound Lines, Inc.*, 7 Cal.App.2d 466 [46 P.2d 297]; and *Grimes* v. *Richfield Oil Co.*, 106 Cal.App. 416 [289 P. 245].)

Appellants' next attack is directed to the alleged unlawful activities of O'Neal, Sr., in carrying passengers for hire without complying with the rules of the California Railroad Commission or the Interstate Commerce Commission, or securing whatever permits or certificates may be required by those bodies. It is a sufficient answer to this question to point

out that neither the failure to secure a permit or certificate nor the absence of brakes on the trailer, nor the fact that a trailer was being hauled, nor the presence of Mrs. Griffith in the front seat (all asserted by appellants to constitute violations of the law relating to common carriers) could under any reasonable view of the evidence be considered the proximate cause of the accident or as having any causal connection therewith.

Prejudicial error cannot be based on the trial court's refusal to admit evidence as to the speed the Chrysler automobile had been driven from Los Angeles to the filling station where the testimony shows respondent's father stopped the car to obtain gasoline and clean the windshield. The accident occurred a short distance from the filling station, and the only evidence in the record as to the speed of the automobile after leaving the filling station was that it was proceeding in second gear and at a speed of approximately 25 to 27 miles per hour. It was the speed of the automobile just before and at the time of the accident that was material. At what rate of speed respondent's father drove from Los Angeles to the filling station where he stopped was immaterial in determining the ultimate issue involved.

It is next asserted that the trial court erred in refusing certain instructions proffered by the defendants. The first of these, to the effect that defendants were not liable even though the lights were not burning, if they used ordinary care in the inspection and maintenance of the equipment, was adequately covered by an instruction which was given, the only substantial difference being that defendants' proffered instruction included a statement that machinery or equipment created by the human mind and hand sometimes fails to operate or becomes defective. Defendants' proffered instruction also included a discussion of the care required of the driver of the Chrysler. This was covered in other instructions. The complaint that the court failed to give requested instructions on defendants' theory of the case is without merit. The instructions given adequately covered the issues framed by the pleadings and presented by the evidence. No prejudicial error can be predicated upon the failure of the court to instruct the jury that if the Chrysler automobile was so loaded or had such a number of persons in the front seat as to obstruct the view of the driver, then the driver was guilty of negligence as a matter of law. The argument that the driver was "distracted" by the presence of Mrs. Griffith in the front

seat or that her presence obstructed his view straight ahead finds no support in the evidence.

Appellants contend, finally, that the award of $25,000 is excessive, pointing out that no special damages, hospital expenses or medical expenses, were proved; that plaintiff had held but one job prior to his injury, repairing tires at $40 per week; and that no showing was made of impaired earning power. While the verdict is large, it cannot be said to be so disproportionate to the injuries received as to indicate that it was the result of passion, prejudice or corruption on the part of the jury. (*Formosa* v. *Yellow Cab Co.*, 31 Cal.App.2d 77 [87 P.2d 716].) Photographs in evidence show that respondent has been left with an ugly, disfiguring scar on his left cheek where he was struck by the 6-inch pipe, as well as lesser scars on his eyebrow and nose. He was unconscious for a week in the hospital, where he remained 59 or 60 days. His jaws were wired together for 45 days. There was a discharge from his right ear, and at the time of the trial his jaw was still numb and could not be opened fully. The only medical testimony was that of a physician who examined respondent shortly before the trial and took X-rays. He testified that respondent suffered a depressed comminuted fracture of the cheek bone, and from the history of the case most probably a basal skull fracture; that the limited movement of the jaw would not improve without further surgery. There was testimony that respondent was markedly slower mentally since the accident. In addition to the foregoing elements of pain and suffering and the effect of the disfigurement upon a young man of the age of respondent—22 years—, there must be taken into consideration the fact that the trial judge, who like the members of the jury had an opportunity to observe the respondent's facial condition, declined upon motion for new trial to modify the award. The question of the amount of damages being committed largely to the discretion of the jury and trial court, their determination of the question may not be set aside on appeal unless it appears that the award is so disproportionate to the injuries sustained as to indicate that it was the result of passion, prejudice or corruption on the part of the triers of fact. Such is not the case here.

The attempted appeal from the order denying defendants' motion for judgment notwithstanding the verdict of tht jury is dismissed. The judgment is affirmed.

York, P. J., and Doran, J., concurred.