[Civ. No. 15827. First Dist., Div. One. Apr. 20, 1954.]

GERTRUDE M. HINTON, Respondent, v. STATE OF
CALIFORNIA et al., Defendants; GEORGE L.
RICHARDSON, Appellant.

George L. Richardson, in pro. per., Bronson, Bronson &
McKinnon for Appellant.

Howard Magee and Philander Brooks Beadle for Respondent.

BRAY, J.—After a judgment against him in the sum of $10,000 and the denials of motions for judgment notwithstanding the verdict and for new trial, defendant Richardson (apparently the only defendant served with process) appeals.

### QUESTIONS PRESENTED

1. Sufficiency of the evidence to show that the push-button traffic signal control device was defective or dangerous.

2. Was plaintiff's injury the direct and proximate result of such condition?

### FACTS

The action is brought pursuant to section 1953, Government Code, against a state officer for injuries received from alleged defective or dangerous condition of public property. Defendant is Superintendent of Electrical and Signal Maintenance of the Division of Highways, State of California, and as such in supervision of the signal device in question. At the southwest corner of El Camino Real and Santa Cruz Avenue in Menlo Park, there is installed, in addition to the common traffic-actuated signal there, a push-button signal device. The traffic-actuated signal is operated by the vehicular traffic approaching El Camino going east along Santa Cruz, tripping the timing device. Thereafter the green signal goes on for that traffic for about 10 seconds. The push-button device is erected on a pole and is for the use and protection of pedestrians. When the button is pressed and the green signal comes on a pedestrian has 24 seconds to cross El Camino. It takes about 22 seconds to do so. It is undisputed that the 10-second interval is insufficient to enable a pedestrian to complete his crossing before the signals controlling northbound and southbound traffic on El Camino would invite the movement of that traffic through the intersection by displaying a green light. Normally there is on the pole about 4½ feet above the sidewalk an instruction sign about 4 inches in width and 7 inches in height. This is attached by two screws. This sign is readily visible to pedestrians. The plate is painted white and in easily read black lettering states "To cross the street push button and wait for green light." El Camino is 84 feet wide from curb to curb but the distance by the crosswalk is 90 feet. One Kemper, under defendant's supervision, was required to maintain, among others, the signals at this intersection. Included in his duties is the determination of whether the instruction signs are in position and to replace them if missing. There was a set schedule of

inspections at least once a week and probably oftener because there was a great deal of trouble due to "kids stealing the signs." Sometimes two or three will be missing at a time and sometimes none missing for two or three months. The signs can be removed with a screwdriver. There was considerable conflict in the evidence as to when the sign was last inspected. There was evidence that the last inspection was seven days before the accident. Plaintiff testified that about two weeks before the accident she passed the pole and saw no sign on it, and saw none at the time of the accident. Four days thereafter defendant found that the sign was gone. Plaintiff testified that she did not know there was such a thing as a push-button type of signal. She had never crossed El Camino here before. As the sign was missing she was uninformed as to the necessity for pushing the button. As she reached the southwest corner she saw no sign on the pole. She did see the traffic signal across the street on the southeast corner. It was dusk, the lights were on the cars, but it was not dark. When the light across the street showed green she started to cross El Camino. As the push-button had not been pressed she had only 10 seconds to cross. When she had reached just beyond the dividing strip at the center of the street, the light in front of her changed to yellow and almost immediately became red. At this instant there was a car stopped at the crosswalk in the first lane beyond the dividing strip. Plaintiff hesitated in front of this car. Its driver motioned to her to go on. She could see no other cars coming. Just as she cleared this car, another one just beyond, which approached the intersection on the green light for El Camino, struck her, badly injuring her.

1. *Sufficiency of the Evidence.*

 Defendant contends that the evidence is not sufficient to show that the sign was missing at the time of the accident. Taking the evidence and the reasonable inferences therefrom most strongly in favor of plaintiff, the evidence was sufficient. It shows that the sign had not been inspected for at least seven days; that it and similar signs were frequently removed by children; that two weeks before when she passed the pole plaintiff did not see it there; that it was not there four days after the accident; and most important of all, although plaintiff looked at the pole twice the evening of the accident she did not see the sign. Such matters as the fact that she was not specially looking for a sign as she did not know there was a push-button device, had never crossed this intersection be-

fore (although she had been near the pole once before), and that it was dusk on the evening in question, were matters for the jury to take into consideration in weighing her testimony, but do not compel a finding against her. Defendant's criticism of negative evidence is not justified by the authorities. ". . . the weight to be given to negative testimony often arises in railroad and other accident cases where it is claimed that signals were not given, and . . . in such cases, the question is purely for the jury, and it has frequently been held that negative evidence of this character is sufficient to sustain a verdict (Jones on Evidence [Horowitz], sec. 893, p. 400), even though it conflict with other evidence to the effect that a warning was actually given." (*Keena* v. *United Railroads*, 197 Cal. 148, 154 [239 P. 1061].) See also *Rogers* v. *City of Los Angeles*, 6 Cal.App.2d 294 [44 P.2d 465], and *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 P. 709] (failure to hear signals claimed to have been given) ; *Takahashi* v. *White Truck etc. Co.*, 15 Cal.App.2d 107 [59 P.2d 161], and *O'Neal* v. *Kelly Pipe Co.*, 76 Cal.App.2d 577 [173 P.2d 685] (absence of lights). "Courts have often been asked to exclude testimony based on what may be called *negative knowledge,* i.e., testimony that a fact did not occur, founded on the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred. Yet there is no inherent weakness in this kind of knowledge. It rests on the same data of the senses. It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that *in the ordinary course of events he would have heard* or seen the fact had it occurred. This sort of testimony is constantly received,— particularly in proof of the failure to give railroad signals, the loss of a chattel, the absence of a witness, the non-existence of a fictitious person, the non-payment of money, and other negative facts." (II Wigmore on Evidence, 3d ed., § 664, p. 778.)

2. *Direct and Proximate Result.*

Section 1953, Government Code, requires that the injury be a *direct* as well as a *proximate* result of the dangerous or defective condition. While there are cases (*Sivertson* v. *City of Moorhead,* 119 Minn. 467 [138 N.W. 674, 675] ; *Missouri, K. & T. Ry. Co.* v. *Lyons,* 53 S.W. 96, 97 ; *King* v. *City of St. Louis,* 250 Mo. 501 [157 S.W. 498, 501] ; *Godwin* v. *Atlantic Coast Line R. Co.,* 120 Ga. 747 [48 S.E. 139, 141] ;

626

*Texas & P. Ry. Co.* v. *Coutourie,* 135 F. 465, 473 [68 C.C.A. 177]; *Davis* v. *Spicer,* 27 Mo.App. 279, 301; *Lovett* v. *City of Chicago,* 35 Ill.App. 570, 571) holding that the words "direct" and "proximate" in the phrase "direct and proximate cause" are synonymous, we doubt that such construction can be given to the phrase in section 1953. ■ We must assume that the Legislature intended the one to mean something different from the other. In *Osborne* v. *Imperial Irr. Dist.,* 8 Cal.App.2d 622 [47 P.2d 798], it was pointed out concerning the predecessor of section 1953 (Gen. Laws, Act 5618, Stats. 1919, p. 756) that the statute imposing liability on a public officer increased the burden of showing the negligence required in the ordinary case as it "increases this burden on a plaintiff by particularly requiring proof that the injury occurred as a *direct* result of the dangerous condition . . ." (Pp. 629-630, emphasis added; see also *Moore* v. *Burton,* 75 Cal.App. 395, 400 [242 P. 902].) Defendant contends that the absence of the instructional sign was not a direct cause of plaintiff's injury, because, he contends, the car which struck her was an independent intervening cause. Both parties accept the definition of "direct cause" in *Anderson* v. *Steinle,* 289 Ill.App. 167 [6 N.E.2d 879, 881]: "The phrase 'direct cause' has been held to mean, 'the active, efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source,' *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.,* 158 Mass. 570 [33 N.E. 690, 691, 20 L.R.A. 297, 35 Am.St.Rep. 540]; and in *Tuff* v. *Waman,* 5 C.B. (N.S.) 573, it is said: 'The direct cause of an injury is one without which the injury would not have happened.'"

Prosser on Torts, page 347, in discussing "Direct Causation," states: "In dealing with this problem, many courts and writers have made a distinction, easier of comprehension than of any exact definition, between consequences which may be regarded as caused 'directly' by the defendant's act, and those which result from the intervention of other causes at a later time." As to "intervening force," he states (p. 353): "'Intervening force,' like 'direct causation,' is a term easier of general comprehension than of any exact definition. An intervening force is one which comes into active operation in producing the result *after* the negligence of the defendant. 'Intervening' is used in a time sense; it refers to later events."

The facts in our case come within the above definitions.

The purpose of the push-button signal was to protect a pedestrian crossing El Camino from the traffic which would be on him before he could cross under the time permitted by the traffic-actuated signal. Unless he knew of the purpose of the push-button signal he would naturally assume that the traffic-actuated green light would allow him sufficient time to safely cross. Without such knowledge and without an instruction sign he would be justified in disregarding the push-button (if he saw it—plaintiff did not), and to act on the invitation to cross held out to him by the traffic-actuated signal. The failure to give the necessary instruction then would be the direct cause of sending a pedestrian into a dangerous stream of traffic which could reasonably be expected to start across the crosswalk before the pedestrian could clear the stream. If the pedestrian is struck by a car in that stream obviously the lack of the instruction sign is a cause " '. . . without which the injury would not have happened' " which in *Anderson* v. *Steinle, supra,* 6 N.E.2d 880, 881, is held to be a direct cause. It likewise fits Prosser's definition. " 'Direct' consequences are those which follow in sequence from the effect of the defendant's act upon conditions existing and forces already in operation at the time, without the intervention of any external forces which come into active operation later." (P. 347.) The condition existing when defendant's acts caused plaintiff to venture into a position of danger is the dangerous stream of traffic and the forces already in operation at that time are the fast moving vehicles which are approaching the intersection and if given the green light will not even stop there, as well as those already stopped but waiting for the green light to signal them to go. Prosser states further (p. 357) : "The risk created by the defendant may include the intervention of the foreseeable negligence of others. As we have seen above, the standard of reasonable conduct may require the defendant to protect the plaintiff against 'that occasional negligence which is one of the ordinary incidents of human life, and therefore to be anticipated.' Or the circumstances of the particular case may indicate the danger of unusual negligence . . ." Certainly with the heavy traffic on El Camino Real, the possibility of negligence on the part of some operators of that traffic must be foreseen. In our case, it is doubtful if the driver of the car which struck plaintiff was negligent. He testified that his view of her was obstructed by the car stopped at the crosswalk to his left. Thus, the absence of the sign contributed more directly

to plaintiff's injury than if the person striking her had also been negligent. The lack of the sign, paraphrasing the words of *Anderson* v. *Steinle, supra*, 6 N.E.2d 879, 881, was a direct cause of the accident because it was " 'the active, efficient cause that sets in motion a train of events which . . . [brought] about a result without the intervention of any force started and working actively from a new and independent source.' " The force which actually struck plaintiff was one into which defendant's neglect precipitated plaintiff. The situation in *Churchman* v. *County of Sonoma*, 59 Cal.App.2d 801 [140 P.2d 81], is somewhat analogous. There, due to its defective condition, the edge of the highway pavement gave way as Churchman's car was passing another one, causing his car to topple over into the ditch. It did not fall flat on its side but was left teetering at an angle of about 45 degrees. Churchman was able to climb out on the left running board and stand partly on it and partly on the body. As the edge of the running board was more than waist high above the pavement and Churchman was an elderly man he decided that the distance was too far to jump. He then started around the front of the car, intending to slide over the hood towards the low side. In attempting to do so he slipped and fell, badly injuring himself. It was contended that as the cause of action against the road commissioner required proof that the injury was the *direct* and proximate result of the defective condition of the highway, Churchman's act in falling "in the simple act of leaving the automobile" (p. 807) initiated a new chain of causation from that started by the defective condition of the road, so that the injury was not the direct result of that condition. The court stated that no other reasonable conclusion could have been reached than that the injury was a direct and proximate result of the defective condition of the highway.

In *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872], the defendant milk distributor had been in the habit of piling milk crates containing empty bottles on the parking of a city street. Sometime before the accident two of the crates became displaced and hidden by others than defendant in a growth of weeds in the space between the cement walk and the property line across the 5-foot pavement from where the crates were stacked. The plaintiff drove a tractor while mowing weeds for the city. In order to avoid the piled crates he ran his tractor into the hidden boxes, causing him to be injured. While, of course, the plaintiff there

was only required to show that the defendant's negligence was a proximate rather than a direct cause of the accident, it is interesting to note that the court held that a man of ordinary prudence should have known that crates from the pile might reach the spot where the plaintiff was injured. Moreover, the concurring opinion of Mr. Justice Traynor contains an excellent discussion of liability under a chain of circumstances bringing about a result. He, like Prosser, objects to the use of terms like "proximate cause." He states concerning "proximate cause" (p. 221): "In any event, application of the doctrine to cases like the present one only leads to confusion, for the considerations that determine whether a defendant was negligent with respect to a plaintiff define the limits of his responsibility. 'Almost invariably these cases present no issue of causation in fact, since the defendant has created a situation acted upon by another force to bring about the result; and to deal with them in terms of "proximate cause" is only to avoid the real issue. The question is one of negligence and the extent of the obligation: whether the defendant's responsibility extends to such interventions, which are foreign to the risk he has created. It might be stated as a problem of duty to protect the plaintiff against such an intervening cause. A decision that the defendant's conduct is not the "proximate cause" of the result means only that he has not been negligent at all, or that his negligence, if any, does not cover such a risk.' "

While, because of the language of section 1953 we are required to deal with "direct and proximate" cause, we must do so with reference to a correct understanding of them and their part in the law of negligence.

In the instant case, there was existing in the highway a condition potentially dangerous to those who wished to cross. Exposing plaintiff to this dangerous condition created a foreseeable risk of harm. It is illogical to say that that harm which, in fact, resulted, is not the direct result of the acts of defendant in exposing plaintiff to that harm. The situation may be likened to a situation where at the end of a highway there is a dangerous stream and the responsible authorities have failed to erect barriers or post warning signs. (See *Brooks* v. *City of Monterey,* 106 Cal.App. 649, 654 [290 P. 540], applying the Public Liability Act to such circumstances.)

A case analogous to ours is *Jones* v. *City of South San Francisco,* 96 Cal.App.2d 427 [216 P.2d 25]. There the city negli-

gently permitted a large pool of water to exist making the sidewalk area and half the street impracticable for pedestrians to use. The city knew that a large number of pedestrians had to walk along that street. While walking in the street to avoid the water, the plaintiffs were struck and injured by an automobile. While the court there had to consider proximate cause only, the decision is appropriate for the reason that it was contended that the negligence of the driver of the automobile broke the chain of causation. The court held that it did not. As long ago as *Pastene* v. *Adams* (1874), 49 Cal. 87, it was held that circumstances somewhat analogous to those in our case constituted a direct cause of injury. There the defendants had piled tiers of lumber in the street in such manner that the ends of some timbers projected more than others. The plaintiff was walking down the street alongside the lumber pile. One Randall drove a wagon so close to the pile that a wheel caught the end of one of the timbers, causing it to fall on the plaintiff, injuring him. In an action against the lumber company for negligence in piling the lumber in the street it was contended that a subsequent intervening cause was solely responsible for the injury. The court held that as the timbers were negligently piled by the defendants such negligence continued until they were thrown down and concurring with Randall's action, was a *direct* and proximate cause of the injury.

Under the circumstances of this case, the jury could, and did, find that the dangerous and defective condition of the push-button signal device was the direct as well as the proximate cause of plaintiff's injury.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.