[Civ. No. 26194. First Dist., Div. Four. June 10, 1970.]                    [

GLORIA JEAN MORITZ et al., Plaintiffs and Appellants, v.
CITY OF SANTA CLARA, Defendant and Respondent.

574

**COUNSEL**

Frederick H. Pearson, Jr., for Plaintiffs and Appellants.

Hoge, Fenton, Jones & Appel and Charles H. Brock for Defendant and Respondent.

**OPINION**

**DEVINE, P. J.**—*Plaintiffs appeal from a judgment of dismissal following the granting of defendant city's motion for summary judgment. Plaintiffs*

were struck by a vehicle driven by one Wilson (who is not a party to the action) while they were in a crosswalk. This action was brought against the City of Santa Clara on two theories: 1) that the crosswalk was unlighted, unpatrolled, unguarded and without proper signs or warning devices; and 2) that the city and its employees knew or in the exercise of ordinary care should have known that the crosswalk was dangerous because it constituted a concealed trap.

The crosswalk runs in mid-block of a four-lane street. On one side of the street is a church and a parochial school, and on the other, a shopping center. On March 26, 1965, at about 7:20 p.m., plaintiffs proceeded from the shopping center side toward the church. Two vehicles stopped at the crosswalk, yielding the right-of-way. After plaintiffs passed in front of these, they were struck by the Wilson vehicle.

■ In the matter of maintenance of the crosswalk and the area, as distinguished from the subject of the asserted "trap," all of the evidence produced at the motion for summary judgment shows incontrovertibly that there was no negligence on the part of the city. The quality of the illumination was shown, by a declaration of the city engineer and also by references to the depositions of the two plaintiffs. The lines of the crosswalk were 12 inches or more in width and were painted in yellow paint. There were messages in letters eight feet in height on the approaches to the crosswalk, spelling the words "SLOW—SCHOOL—XING." There were highway signs of diamond shape, with the word "SCHOOL" posted beyond the message on the surface of the street. Limit lines were painted across the traffic lanes and hash marks were painted across the crosswalk. The pattern was that used throughout the State of California and is in compliance with the requirements of Vehicle Code section 21368. The standards conformed to or exceeded those contained in the planning manual published by the State of California, Department of Public Works, Division of Highways.

The plan or design of the crosswalk and its adjacent lighting system was approved in advance of construction by the legislative body of the city and by the city engineer. Therefore, neither the city nor its employees would be liable under the provisions of Government Code section 830.6, if a reasonable legislative body or a reasonable public employee could have approved the plan or design.

But appellants contend that they were not using the crosswalk for the purpose it was constructed, that is, they were not on their way to or from school. They argue that a trap situation had been created, presumably because the driver of a motor vehicle at nighttime might deduce that school was not in session, and that, therefore, the crosswalk, with all of its signs and warnings, was not meant to control the respective rights of drivers and

of pedestrians.* We do not find this argument to be convincing. A crosswalk is defined by Vehicle Code section 275, subdivision (b) as: "Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface." Vehicle Code section 21368 does not diminish the effectiveness of a crosswalk, nor does it create a wholly independent system of crosswalks. It does provide that crosswalks contiguous to school buildings or their grounds shall be painted or marked in yellow, and it requires that the words "SLOW—SCHOOL—XING" shall be painted in the lanes leading to the crosswalk. It is contemplated by the statute that this type of crosswalk, as may any other, may be laid down in mid-block, because special reference is made to the yellow painting of pedestrian crosswalks at intersections in case any one of the crosswalks is required to be so painted. Drivers of vehicles are required to yield the right-of-way to pedestrians crossing the roadway within any marked crosswalk, by the provisions of Vehicle Code section 21950; and whenever any vehicle is stopped at a marked crosswalk to permit a pedestrian to cross the roadway, the driver of another vehicle approaching from the rear shall not overtake and pass the stopped vehicle, by the provisions of Vehicle Code section 21951. These sections apply to all crosswalks, whether they are painted white or yellow. The driver of the vehicle is not permitted to lessen compliance with his duties because of the hour of the day or night, or because the day may be one in which school is not in session.

Nor was it required of the city, under section 830.8 of the Government Code, that a warning of a "dangerous condition" be given by a signal, sign, marking or device. This is required by that section only if a dangerous condition exists within the statutory definition. (*Pfeifer* v. *County of San Joaquin,* 67 Cal.2d 177, 184 [60 Cal.Rptr. 493, 430 P.2d 51].) A dangerous condition is defined by Government Code section 830, subdivision (a) as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Pedestrians using the crosswalk would do so rightfully and without danger except that which would arise from a plain violation of law by the driver of a vehicle.

We recognize the rule that a governmental unit is not exculpated, if otherwise liable, by the fact that a third party's negligence may have been one of the proximate causes of the injury. (*Callahan* v. *City & County of San Francisco,* 249 Cal.App.2d 696, 701 [57 Cal.Rptr. 639]; *Gardner* v. *City of San Jose,* 248 Cal.App.2d 798, 805 [57 Cal.Rptr. 176]; *Chavez* v. *County of Merced,* 229 Cal.App.2d 387 [40 Cal.Rptr. 334]; *Irvin* v.

---

*There is nothing in the record about the observations or deductions of the particular driver, Wilson.

*Padelford,* 127 Cal.App.2d 135, 141 [273 P.2d 539]; *Hinton* v. *State of California,* 124 Cal.App.2d 622 [269 P.2d 154]; *Bauman* v. *City & County of San Francisco,* 42 Cal.App.2d 144, 154 [108 P.2d 989].) But the "design defense" is valid where there is any substantial evidence that a reasonable employee or legislative body could have approved the plan which actually was approved. A design which clearly comports with the provisions of the Vehicle Code and also with the specifications of the Division of Highways certainly meets this test. The design defense is entirely adequate to sustain a summary judgment. (*Cabell* v. *State of California,* 67 Cal.2d 150, 152-154 [60 Cal.Rptr. 476, 430 P.2d 34]; *Becker* v. *Johnston,* 67 Cal.2d 163, 172-173 [60 Cal.Rptr. 485, 430 P.2d 43].)

The cases cited by appellants are easily distinguished. In *Callahan* v. *City & County of San Francisco,* 249 Cal.App.2d 696 [57 Cal.Rptr. 639], a demurrer had been sustained without leave to amend. The design defense, therefore, was not presented, as it has been in the instant case, by affidavits. According to plaintiff's complaint in *Callahan,* a trap situation was created by the building of a road in such manner as to make it look like a freeway, in a district where there were frequent fogs, as there was on the day of the accident, but the "freeway" ended close to the edge of a lake. In *Gardner* v. *City of San Jose,* 248 Cal.App.2d 798 [57 Cal.Rptr. 176], there was such defective maintenance of a pedestrian subway as to compel the pedestrians, including plaintiff, a high school student, to use the roadway under such circumstances that a pedestrian and a driver might each think that he had the right-of-way.

Finally, appellants contend that the evidence of the city's installing of precautionary traffic signals at the crosswalk in question subsequent to the time of their accident, created a triable issue of fact as to whether a reasonable public employee or public entity could have approved the original plans, which did not call for installation of traffic control signals. Government Code section 830.5, subdivision (b) provides: "The fact that action was taken after an injury occurred to protect against a condition of public property is not evidence that the public property was in a dangerous condition at the time of the injury." But appellants' theory is that evidence of precautions taken subsequent to an accident is admissible when it tends to impeach a witness who personally authorized the changes, because the trier of fact might consider his conduct inconsistent with his testimony that the earlier condition was free of defect. (*Pierce* v. *J. C. Penney Co.,* 167 Cal.App.2d 3, 8 [334 P.2d 117].) This argument is without merit. The testimony on cross-examination at best would create a conflict with the substantial evidence of reasonableness of the design, which we have described above. It is not necessary for the court to withhold summary judgment whenever subsequent improvements are made

because of the possibility that a particular witness may be called for the defense and may be subject to cross-examination which, even if successful, would not destroy the "design defense" which has been enacted by statute.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.