[Civ. No. 1087. Fourth Appellate District.—August 5, 1935.]

E. L. OSBORNE et al., Respondents, v. IMPERIAL IRRIGATION DISTRICT (an Irrigation District) et al., Defendants; IRA ATEN et al., Appellants.

Chas. L. Childers and D. B. Roberts for Appellants.

Hickcox & Trude for Respondents.

BARNARD, P. J.—This is an action for damages for the death of a minor daughter of the plaintiffs, the child being about six years and five months old.

A demurrer filed by the defendant district was sustained and the action went to trial as against the individual defendants resulting in a judgment in favor of the plaintiffs for $5,000, from which judgment those defendants have appealed.

The respondent E. L. Osborne was employed by the defendant district and was in charge of a concrete structure extending across one of the large canals of the district, the purpose of which was to control the flow of water in the canal and to make possible the diversion of water into smaller canals. He was required to live in a house belonging to the district and his main duty consisted of opening and closing the gates in the structure and regulating and controlling the flow of water, a telephone being maintained in the house over which he received his orders and made his reports. This house, on the east bank of the canal, was surrounded by a fence, the entrance being through an ordinary picket gate which was at the east end of the concrete structure. The only means of ingress and egrees to and from the house was by walking along the top of the structure, which was about forty feet long and some 4½ feet wide, and through this gate. An iron railing extended along the entire north side of the walk formed by the top of the structure. A concrete heading for water gates formed a banister along the westerly half of the south side of this walk, but the easterly half of the south side was built for the insertion of "flash boards" and there was no railing of any kind along that portion of the south side. The picket gate referred to opened over this walk. It was hinged on its south side and when opened could be swung clear around parallel to the fence, in which position it would extend over the water to the south of the structure.

Osborne moved into this house with his family on October 24, 1929, and the little girl went to school regularly from that time until the accident happened. The school was some miles away and the child went back and forth in a school bus which stopped for her at a point about one-half a mile west of the house. The place where the bus stopped and the intervening road was visible from the house and it took the child from ten to fifteen minutes to walk from the bus to her home.

On May 7, 1930, the child left the bus at about 3:45 in the afternoon and, with another girl named Lyons, walked

toward her home. The Lyons girl, while entering her own home which was on the west side of the canal some 300 to 400 feet distant from the structure, observed the respondents' daughter about halfway to the canal and walking toward the concrete structure, this being the last time the child was seen alive. When the child failed to appear at home the parents instituted a search for her and a little later the water was let out of the canal and a search made without success. On the morning of May 9, the body of the child was brought to the Lyons home by a man who had found it. This man died before the trial and there is no evidence as to where the body was found. Mrs. Lyons testified that when the body was brought to her home it had the appearance of having been in the water and that the body and the child's clothes were covered with silt.

The respondents' cause of action is and must be based upon the act of 1919 (Gen. Laws, Act 5618, Stats. 1919, p. 756), which provides that no officer of such a district shall be liable for any injury resulting from the defective or dangerous condition of any bridge, work or property unless it shall first appear: (1) that the injury was the direct and proximate result of such defective or dangerous condition, (2) that such officer had notice of the same, (3) that he had authority and it was his duty to remedy the condition at the expense of the district and that funds therefor were immediately available to him, (4) that he failed to remedy the same within a reasonable time after receiving such notice and while able to do so, and (5) then only when it further appears that the injury was sustained while the structure was being carefully used and that due care was being exercised to avoid the existing danger.

The appellants first contend that the complaint failed to state a cause of action under this section. The complaint alleged that the defendants were and had been maintaining this structure in a dangerous and unsafe condition in that the top of the same was designed to be used as a footpath and bridge and was very narrow; that the waters of the canal were continually rushing in a northerly direction with a tendency to cause any person walking across the structure to lose his balance and be likely to fall into the canal; that there was no railing or guardrail along the south side of the struc-

ture; that the gate at the east end of the structure and leading to the dwelling was so constructed that it had a tendency to impel or throw a person opening it toward the unguarded south side of the footpath, if any appreciable amount of wind was blowing at the time; that a railing along the south side was necessary to make the bridge safe for pedestrians; that prior to the accident here in question the plaintiffs informed the defendants that a railing along the south side was necessary in order to make the bridge safe and demanded that such a railing be installed; and that with full knowledge of the unsafe and dangerous condition mentioned the defendants continued to maintain and operate the structure without a guardrail on the south side thereof.

In *Gorman* v. *County of Sacramento*, 92 Cal. App. 656 [268 Pac. 1083], in pointing out a distinction between the act of 1919 and the act of 1923 making counties, municipalities and school districts liable for the negligence of their officers in certain cases, the court said:

"An examination of the 1919 act shows that a person suing an officer for negligence has not only to plead, but also to prove, that the injury and damage complained of was sustained while such public street, highway, bridge, building, work, or property was being carefully used and that due care was being exercised to avoid damage due to such condition; or, in other words, this act changes the general rule that the burden of showing contributory negligence is upon the defendant, and requires an affirmative showing on the part of the plaintiff that he was using the road, bridge, or street with due care."

In *Shannon* v. *Fleishhacker*, 116 Cal. App. 258 [2 Pac. (2d) 835], the court said: "The appellant having failed to plead or prove that the deceased was using the 'property' with due care she has utterly failed to make a case to go to the jury." The same principle is set forth in *Ham* v. *Los Angeles County*, 46 Cal. App. 148 [189 Pac. 462], and in *Moore* v. *Burton*, 75 Cal. App. 395 [242 Pac. 902]. The complaint herein is entirely lacking in the respect referred to and contains no allegation relating to the manner in which the property in question was being used. ■ The respondents argue that this defect is cured by the presumption that a person uses due care for his own safety. Under similar

circumstances the court in *Shannon* v. *Fleishhacker, supra,* said:

"The only answer suggested to the foregoing is that, under the rule of *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529], the law presumes that the deceased exercised due care for his safety and hence any evidence of negligence on his part would merely create a conflict which should go to the jury. These considerations were before the court in the Ham case where it was said that to so hold 'is to offset by a legal presumption the declaration of the statute that the burden is on the plaintiff in such cases to show that due care was used by him'. (Page 161 of 46 Cal. App.) To this it might be added that to so hold is to render that portion of the statute nugatory because, if the plaintiff can rely upon that presumption alone there would be no need of his pleading or proving due care. The proper rule, as we understand the decisions, is that this presumption, which is available to the plaintiff generally, is not sufficient, in actions brought under this statute, to satisfy the demand that the plaintiff must plead and prove the exercise of due care in the use of the public property causing the injury.

"There is justifiable reason for this distinction. Public property is open to the use of the public generally; and the general use of such property is a constant source of danger to the public. To encourage the exercise of due care in the use of public property, the legislature might well limit the public liability to those who exercise such care. And, as the state and its political subdivisions and officials may not be sued for damages in such cases without the consent of the state, the legislature may properly impose such reasonable restrictions upon actions of this character."

The appellants cite the case of *Moore* v. *Burton, supra,* to the point that the use of due care may be alleged in general terms, similar to an allegation of negligence. While this is true and while the court held in that case that the use of due care had been sufficiently alleged, nothing therein can be considered as sustaining the proposition that there need be no allegation in that regard or that alleging negligence in general terms is a sufficient compliance with this affirmative requirement of the statute here in question.

If it be assumed that this defect in the pleading might be cured by proof that due care was used, we are here met by an entire absence of proof in this regard. There is no evidence in the record as to the manner in which this structure was used on the occasion in question and no facts appear from which it may be reasonably inferred that due care was being used.

It is next contended that the evidence is insufficient to sustain certain findings to the effect that the structure here in question was too narrow for use as a footpath; that the gate at the east end thereof, leading to the house, was so constructed and maintained as to be dangerous and unsafe because it had a natural tendency, as used in connection with the structure and in the absence of a guardrail on the south side, to impel or throw the user thereof to the south or unguarded side of the structure and into the canal, particularly, when any appreciable amount of wind was blowing; that the structure was inherently dangerous for use as a footpath in the absence of a railing along its entire south side; that such a railing could have been maintained thereon without material interference with the use and operation of the structure for the purposes for which it was constructed; that the appellant Knight had actual knowledge and notice of said dangerous and unsafe condition and that each and all of the appellants had full knowledge of such unsafe and dangerous condition; that, on the occasion in question, the minor child of the plaintiffs, while attempting to cross the structure and while attempting to open the gate leading from the same to her home was, because of the absence of a railing or guard on the south side, blown or thrown by said gate into the canal and as the direct cause and result thereof was drowned; that the death of the child was caused directly through the negligence of the defendants in failing to cause a guardrail or railing to be placed along the south side of the structure; and that the respondents were free from contributory negligence.

It was respondents' theory that when the child attempted to open the gate leading to her home a heavy wind blew the gate back against the fence and over the canal, throwing her into the water. The father of the child testified that shortly after 3:30 on the day in question he went out several times

to look for his daughter; that from his door he could see where the bus stopped; that two or three times he had to go into the house to answer the telephone in connection with district business; that one or more of these telephone conversations lasted ten minutes; that the wind was blowing very strong; that he had to push quite hard on the gate to open it; that when he got the gate part way open he had to hold on to it to keep it from blowing open; that when partly open the wind would catch it and blow it open; that when he went in to answer the phone the last time he closed the gate; and that when he came out the gate was open and back against the fence. He also testified that he followed his daughter's footprints to within thirty feet of the west end of the structure and that the condition of the ground from that point to the structure was such that tracks could not be seen.

There is considerable evidence in the record which is uncontradicted, to the effect that the concrete structure here in question was built in the usual style and manner and in accordance with good engineering practice, and that because of the manner in which flash boards were used on the east half of the south side of the structure a guardrail along that portion of the south side would have interfered with the use of the structure for the purposes for which it was built. If, however, it may be assumed that negligence appears from the manner in which the structure was built and maintained and that it was maintained in a dangerous condition, no officer of the district is liable, under the statute, unless it first appears that the injury sustained was the direct and proximate result of such defective or dangerous condition. Both in that respect and in changing the usual rule of proving contributory negligence and affirmatively placing upon a plaintiff the burden of showing that due care was exercised by the injured party while using the structure, this statute requires more of a plaintiff than is required in the ordinary negligence case. In the ordinary case, it is as necessary for a plaintiff to show that the defendant's negligence was a cause of the injury as it is to show that the defendant was guilty of negligence and this element must rest upon proof and not be left to a mere surmise or guess. (*Puckhaber* v. *Southern Pacific Co.*, 132 Cal. 363 [64 Pac. 480].) The statute with which we are here concerned increases this burden

on a plaintiff by particularly requiring proof that the injury occurred as a direct result of the dangerous condition and while the structure was being used with due care.

The only evidence we have here is that the child was approaching the structure, that she disappeared, that her body was found somewhere the second morning thereafter, that the condition of the body and the clothes indicated that she had been in the water, and that the gate leading to the house was found wide open some ten minutes after it had been closed. In order to sustain the judgment it must be assumed or inferred that the child went upon the structure, that thereafter she fell from it, that she fell from that portion which was without a guardrail, and that she fell because a guardrail was not there. Upon the respondents' theory it must further be assumed or inferred that she was knocked from the structure while attempting to open the gate in a heavy wind.

There was some danger in connection with this structure even under the best of conditions. It was not designed for the general use of the public but only for use by those who would be thoroughly familiar with it. While it was undoubtedly dangerous, so far as a small child is concerned, the entire situation with the open canal presented a dangerous condition whether or not a railing was on the south side of this structure. If we are left to a guess as to what occurred, a number of possibilities suggest themselves. With the natural tendency of a six year old child to play, especially when just released from school, the girl may have wandered along the bank of the canal instead of attempting to cross the structure, she may have climbed upon the railings upon the part of the structure which was thus protected, she may have attempted to swing on the gate after she had opened it, she may have stopped on the unprotected part to throw sticks in the water, or she may have attempted to recover something which was being blown into the canal. The respondents rely upon the case of *Gorman* v. *County of Sacramento, supra,* where a suggestion of other ways as to how the deceased in that case might have gotten into the canal was met with the statement by the court that the only reasonable inference to be drawn from the facts appearing in the record was that the boy met his death by riding his bicycle off the bridge into

the water, and that all of the known circumstances pointed unerringly to that conclusion. In that case the position of the body and of the bicycle, when found, supported such an inference. In the case before us, facts which point unerringly to the conclusion relied on are absent. Other reasonable inferences may be drawn from such facts as we have and regardless of what might be the situation in an ordinary negligence case, in our opinion, this evidence is not sufficient to meet the larger and more definite requirement placed upon a plaintiff by this statute.

■ Turning to the matter of whether these appellants had notice of the dangerous condition relied upon by the respondents, the evidence is again unsatisfactory. With respect to four of the appellants who are directors of the district there is no evidence that any one of them had ever seen the structure or knew anything about it or had ever been informed of any supposedly dangerous condition with respect thereto. As to the other director, appellant Aten, the only evidence is that he had been to the structure two or three times in the five years preceding the trial. He testified that he had visited all of the headgates, that some had railings and some did not, and that he had never noticed whether or not there was a railing on this particular structure. Appellant Dowd testified that he had visited the structure frequently and knew that there was no railing on a portion of the south side. The appellant Knight, who was general watermaster of the district, testified that he was familiar with the structure and knew that there was no railing on the east half of the south side thereof. The respondent E. L. Osborne testified that after moving there he had asked Knight to install a railing and that he said he would do so as soon as possible.

While a number of cases have held, in connection with the 1933 act imposing liability upon counties, municipalities and school districts in certain cases, that notice to the governing boards thereof may be implied from dangerous conditions of long standing, and that the knowledge of any one of its responsible officers is sufficient to bind the city or district, the statute here in question relates to the liability of such officers individually, and requires that notice be brought home to a particular defendant before he can be held liable.

Under this rule no notice of any kind appears as to the appellant directors with the exception of the appellant Aten. It is not shown that he knew that any children were to use the structure and, in view of the surrounding dangers, such information as he had from seeing the structure two or three times over five years is not sufficient to charge him with notice of the particularly dangerous condition here relied upon, especially when it appears that a railing could not have been placed there without interfering with the use of the structure. The same is largely true of the two appellants last named, although Knight knew that the family of the respondents included a child. The circumstances in general were such as to place particular responsibility upon the parents of the child and, under these circumstances, we think it cannot be held that Knight's knowledge that no railing was along the south side of that portion of the structure was sufficient notice of a dangerous condition which should be remedied, within the meaning of this statute. There was a railing along the entire north side which would protect a person who was carefully using the structure as a walk, a railing along the rest of the south side would have interfered with the use of the structure as intended, the exposed portion was little, if any, more dangerous than the banks of the canal in general, and even a railing would not furnish complete protection, with respect to a small child, whose safety after all must depend upon careful use of the walk and watchfulness on the part of the parents. The respondents particularly rely upon the dangerous condition of the gate leading to their home on account of the very strong wind which was blowing on the day of the accident. There is nothing whatever to charge any of the appellants with notice of any unusual or dangerous condition with respect to this gate, which was an ordinary picket gate of the usual type. There is no evidence that any of the appellants knew that this gate had a tendency to swing over too far, that it would be affected by the wind or, in fact, that any appreciable wind was to be expected. If such a fact existed it was better known to the respondents than to anyone else and it would have been a very simple matter for them to have so fixed the gate that it could not open beyond the south line of the structure or any other desired point. The father's testimony that a high wind was

blowing that day and that he himself had difficulty in holding the gate should have been a special warning to him and, if respondents' theory as to how the accident happened is correct, the general circumstances tend more to show negligence on his part than an especially dangerous condition which should have been known to the appellants.

The respondents argue that while the relation of landlord and tenant existed between them and the appellants, in so far as the house occupied by them is concerned, that with respect to this structure they and their daughter were invitees. If this be true it is well settled, in so far as that theory is concerned, that the persons in charge of premises are not liable for injuries to an invitee which result from a danger which is as obvious to him as it is to them. (*Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 Pac. 793]; *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 Pac. 76]; *Weddle* v. *Heath*, 211 Cal. 445 [295 Pac. 832].) While the danger in question may not have been as obvious to the child as to an older person, it was certainly as obvious to the respondents as to any of the appellants. While this point is not decisive of the case it does not aid the respondents nor relieve them from the burden placed upon them by the statute.

While the respondents assert that a perusal of the record will disclose evidence sufficient to sustain every finding made, the evidence relied upon is not pointed out or referred to. Omitting inferences not based upon facts shown, we are unable to find evidence to sustain the findings that the little girl met her death while trying to open the gate leading from the structure to her home, that her death was caused directly through the negligence of the appellants in failing to install a railing along the entire south side of the structure, and that all of the appellants had notice and knowledge of the dangerous condition of the structure. In addition, it was not alleged, proved or found that the structure was being carefully used at the time of the injury.

It is the general policy of the law to limit the liability of officers of districts and other governmental agencies, without which limitation responsible persons would hesitate to accept such offices with a danger of liability arising from remote conditions of which they had little or no knowledge

and with which they personally had nothing to do. The general good of the public justifies the rather strict regulations which have been enacted for the protection of such officers. Those restrictions place a burden upon the plaintiff in such an action which should not be lightly set aside, and their effect should not be destroyed by permitting a mere guess or surmise as to what happened, or inferences based upon other inferences, to take the place of facts established by evidence. There was a definite burden upon the respondents here which, in our opinion, they have not met.

The judgment appealed from is reversed.

Jennings, J., and Harden, J., *pro tem.*, concurred.