[Civ. No. 10227.   Third Dist.   Aug. 14, 1964.]

ROBERT ZEPPI et al., Plaintiffs and Appellants, v. OSCAR E. BEACH et al., Defendants and Respondents.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Albert E. Levy for Plaintiffs and Appellants.

Raymond A. Leonard, Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis for Defendants and Respondents.

FRIEDMAN, J.—Robert and Gloria Zeppi, the plaintiffs, were injured in a collision with an automobile driven by Leo Kroger. Kroger was killed in the accident. Plaintiffs filed suit seeking damages from Kroger's estate, also naming as defendants Oscar E. Beach and Charles R. Waugh, maintenance superintendent and maintenance foreman, respectively, in the employ of the State Division of Highways. In addition to alleging negligence on Kroger's part, the complaint charged

that the accident was the direct and proximate result of a dangerous highway condition for which Beach and Waugh were responsible. Recovery against the highway employees was premised on former Government Code section 1953, as it read in 1957, describing the conditions necessary to impose personal liability upon public officers for defective or dangerous conditions of public property.[1]

The case went to trial before a jury. At the close of plaintiffs' evidence, separate motions for a nonsuit were made on behalf of Kroger's estate and on behalf of Beach and Waugh. The court denied the Kroger motion but granted the nonsuit as to Beach and Waugh. The trial proceeded against Kroger's estate and the jury returned a verdict in favor of Mr. and Mrs. Zeppi, who appeal, however, from the judgment of nonsuit.

The trial court could properly grant the nonsuit only if plaintiffs' array of evidence included no substantial evidence to support a verdict in their favor; in considering the nonsuit motion, the court was required to give plaintiffs' evidence all the value to which it was legally entitled, to indulge in every legitimate inference which might be drawn from that evidence, and to disregard any conflicting evidence. (*Raber* v. *Tumin*, 36 Cal.2d 654, 656 [226 P.2d 574].)

This appellate court too must consider the evidence in the light most favorable to plaintiffs and accept every pre-

---

[1] In 1963 Government Code section 1953 was superseded by sections 840 to 840.6, which were included in comprehensive legislation regulating tort liability of public entities and public employees. (Stats. 1963, ch. 1681.) In 1957 section 1953 provided as follows:

"No officer of the State or of any district, county, or city is liable for any damage or injury to any person or property resulting from the defective or dangerous condition of any public property, unless all of the following first appear:

"(a) The injury sustained was the direct and proximate result of such defective or dangerous condition.

"(b) The officer had notice of such defective or dangerous condition or such defective or dangerous condition was directly attributable to work done by him, or under his direction, in a negligent, careless or unworkmanlike manner.

"(c) He had authority and it was his duty to remedy such condition at the expense of the State or of a political subdivision thereof and that funds for that purpose were immediately available to him.

"(d) Within a reasonable time after receiving such notice and being able to remedy such condition, he failed so to do, or failed to take reasonable steps to give adequate warning of such condition.

"(e) The damage or injury was sustained while such public property was being carefully used, and due care was being exercised to avoid the danger due to such condition."

sumption and reasonable inference which tends to support plaintiffs' case. (*Coates* v. *Chinn*, 51 Cal.2d 304, 306-307 [332 P.2d 289].)

We summarize the facts as revealed by the evidence adduced on behalf of plaintiffs. State Highway 32 traverses the area between Chico and Orland in Butte County. The Chico office of the State Division of Highways is charged with its maintenance. Defendant Beach was the maintenance superintendent at the Chico office and directly responsible for maintaining the highway. Defendant Waugh was a maintenance foreman who worked under the control and supervision of Beach.

At the point of the accident, the paved portion of Highway 32 was 18 feet wide and divided into two lanes by a white center line. On each side of the highway there were dirt shoulders 14 feet wide. Standard maintenance procedures called for keeping the dirt shoulder flush with the pavement edge. Along this particular portion of highway, however, the shoulder was muddy and soft during the winter and at times there was a 2 to 3-inch dropoff from the pavement to the shoulder. Because the road was so narrow, drivers frequently drove with their right wheels on the shoulder to avoid oncoming cars. Because of the dropoff, the edge of the highway could hook a car's wheels and cause a skid when the driver attempted to return to the highway. Notwithstanding this condition, the highway had been used for years without an accident.

The road condition described above called for recurrent grading of the shoulder and pushing of the soil into the small declivity at the juncture of pavement and shoulder in order to accomplish a flush surface. On Tuesday, February 19, 1957, the shoulder was graded by Division of Highway employees. Beach was not sure whether he directed the work, but he did know about it and it was routine work. Waugh was the foreman in charge of the grading and he directly ordered that it be done. The operation was performed with a grader weighing 12 tons and equipped with a 12-foot blade. The blade scraped dirt from the side of the road up onto the shoulder. Tandem wheels on the rear of the grader compacted the dirt. Sufficient dirt was brought up and compacted to raise the shoulder to the level of the highway. Witnesses described the dirt fill material as river silt and loose dirt; they said the dropoff was still present but was concealed by the new dirt pushed up by the grading. Because the dirt was unstable even when compacted, the grading

operation had to be repeated approximately six times each year. The highway had been consistently graded in the same manner each year since 1951, when Beach had been placed in charge. As maintenance superintendent, Beach had no authority to construct or request construction of a paved shoulder or a wider road. Building a wider road or paving the shoulders was a construction operation, not a maintenance operation. Moreover, costs of construction were paid from construction funds, and state appropriations for maintenance were not available for construction.

On Wednesday, February 20, 1957, rain commenced and continued at intervals through the following Sunday. The rain caused the shoulder to become muddy and soft. On Friday, February 22, Waugh inspected the shoulder. He observed that ". . . the trucks had been running next to the edge, of which they always do, and in the muddy condition it had slopped out a little mud from the side of the road, but outside of that it was in very good condition." Beach had last observed the shoulder on Tuesday afternoon, February 19, after it had been graded. He did not see it after the rain commenced the next day but he knew from experience that a dirt shoulder became especially muddy when graded just prior to a rain.

The accident took place on Sunday, February 24, shortly after noon. Robert Zeppi was driving easterly on Highway 32 with his wife as a passenger. There was no rain at that particular time but there was a light mist. Because of the road and weather conditions, Zeppi slowed to a speed of approximately 30 to 35 miles per hour. While driving at this speed, plaintiffs noticed the Kroger car driving "at a pretty fast speed" over a rise toward them. As soon as Kroger came over the rise, he drove his car to the right and both his right wheels went off the highway onto the shoulder. Kroger's car continued in this fashion for approximately 50 feet, spraying mud the entire distance. As he watched Kroger's car, Zeppi brought his car to a stop. Kroger brought his car back onto the highway, where it went into an immediate broadside skid. The Kroger car skidded 141 feet and crashed head-on into the Zeppi car.

Witnesses who arrived at the scene shortly after the accident testified to intermittent rain and muddy highway shoulders. A highway patrolman testified that the 50-foot stretch of shoulder traversed by Kroger's car before it went into a skid was muddy and soft; that there was a declivity of several inches between the pavement edge and the surface

of the shoulder. Beach testified that he did not consider the condition dangerous "at a normal rate of speed," then admitted that it was not a safe shoulder, that it was a muddy shoulder or soft shoulder. The highway maintenance personnel in the Chico office had available to them highway warning signs with such legends as "Soft Shoulder," "Dangerous but Passable," and "Slow." These signs were available to both Beach and Waugh and could have been placed at the roadside on instructions of either. Following the accident, Beach directed that "Soft Shoulder" signs be placed at the scene.

The nonsuit motion was based on three grounds: (1) that the dangerous highway condition was not "the" direct and proximate cause of the accident within the meaning of subdivision (a) of section 1953 nor, in view of Kroger's negligent driving, was the highway being carefully used as required by subdivision (e) of the statute; (2) that defendants Beach and Waugh did not have duty, authority or funds to remedy the condition; (3) that neither Beach nor Waugh was required to anticipate Kroger's negligent driving by putting up warning signs. The court granted the nonsuit on all three grounds.

The parties have assumed for the purpose of this decision that Beach and Waugh were "officers" of the state (actually a matter of some doubt); or, in the alternative, that Government Code section 1953 employed the word "officers" in a very general sense, embracing both public officers and public employees. (See *Spreckels* v. *Graham,* 194 Cal. 516, 527-532 [228 P. 1040]; *Hinton* v. *State,* 124 Cal.App.2d 622 [269 P.2d 154]; cf. Van Alstyne, *Sovereign Immunity Study,* Report, California Law Revision Commission (1963) vol. 5, p. 121.)

Section 1953 established a series of express conditions, all of which a plaintiff had to plead and prove in order to fasten the public agent with personal liability. (*Bauer* v. *County of Ventura,* 45 Cal.2d 276, 290-291 [289 P.2d 1]; *Bartlett* v. *State,* 145 Cal.App.2d 50, 55 [301 P.2d 985]; *Osborne* v. *Imperial Irr. Dist.,* 8 Cal.App.2d 622, 626 [47 P.2d 798]; David, *Tort Liability of Municipal Officers,* 13 So.Cal.L.Rev. 49, 55-60.) If plaintiffs in the present case failed to prove any one of these conditions, the trial judge was justified in granting the nonsuit. (*Shannon* v. *Fleishhacker,* 116 Cal.App. 258, 263 [2 P.2d 835, 3 P.2d 1020]; *McCain* v. *City of Oakland,* 52 Cal.App. 639, 642 [199 P. 841].)

Subdivision (e) of section 1953 required plaintiffs to demonstrate that "The damage or injury was sustained while

. . . [the] public property was being carefully used, and due care was being exercised to avoid the danger due to [the dangerous] condition.'' A number of cases recognize that the quoted provision placed upon the plaintiff the burden of proving affirmatively that he himself was using the facility with due care, that is, he was not contributorily negligent. (*Bauer* v. *County of Ventura, supra,* 45 Cal.2d at p. 290; *Osborne* v. *Imperial Irr. Dist., supra,* 8 Cal.App.2d at p. 626; *Shannon* v. *Fleishhacker, supra,* 116 Cal.App. at p. 262; *Gorman* v. *County of Sacramento,* 92 Cal.App. 656, 668 [268 P. 1083].) No California decision has held that the plaintiff also had to prove careful use by a third party, in this case, Kroger. (See, however, *Ham* v. *County of Los Angeles,* 46 Cal.App. 148, 160 [189 P. 462].) Notably, the statutory language was not restricted as to person. Just as plainly as words could do, the statute required proof that the public property was being carefully used, no matter by whom, and that due care was being exercised, no matter by whom, to avoid the danger. Only by injecting absent verbiage could the element of care be limited to the injured plaintiff. Straightforward pursuit of the statutory language leads to the proposition that proof of careful use by a third-party participant was a necessary element of the public agent's liability; correlatively, that concurrent negligence of a third party barred recovery.

We do not stop with a literal reading of the statute, but inquire whether the result is consistent with legislative intent and statutory spirit. (*Pritchard* v. *Sully-Miller Contracting Co.,* 178 Cal.App.2d 246, 256 [2 Cal.Rptr. 830].) Section 1953, subdivision (e), was a codification of language originally employed in chapter 593, Statutes of 1911, and chapter 360, Statutes of 1919. At the point in question, each version of the statute employed substantially identical phraseology. In each version the statute demanded careful use of the property and the exercise of care to avoid the danger, without identifying the user of the property or the exerciser of care. The predecessors of section 1953, subdivision (e), gave no evidence of a legislative intent at variance with that expressed by it.

Policy considerations are entirely consistent. Section 1953 was designed as a limitation on the common law liability of public officers. (*Bartlett* v. *State, supra,* 145 Cal.App.2d at p. 55; *Ham* v. *County of Los Angeles, supra,* 46 Cal.App. at p. 164.) Its objective was to encourage vigorous performance of public functions, without fear of personal liability

from remote conditions or from conditions for which the officer had no responsibility. (*Osborne* v. *Imperial Irr. Dist.*, *supra,* 8 Cal.App.2d at pp. 633-634; Van Alstyne, *op. cit. supra,* vol. 5, pp. 368, 372-373.) Public facilities and property are designed for use by large numbers of people. Thus the policy objective of the statute would include the notion that the public officer should not be personally liable for accidents which would not have occurred but for the concurrent negligence of some member of the public, even though a dangerous condition attributable to the officer was a preexisting, passive and concurrent cause of the injury. As a result, the injured person would be relegated to his remedy against the concurrently negligent member of the public.

Subdivision (a) of section 1953, requiring "direct and proximate" causation, was closely related in purpose and effect. Indeed, the first ground of the present nonsuit motion rested on a combination of both subdivisions. These two portions of the statute might overlap in some circumstances, but operate independently in others. Where the plaintiff's injury was traceable to the combination of a preexisting dangerous highway condition and the activities of another motorist, subdivision (a) would subject the public agent to liability where the actions of the motorist were a reasonably foreseeable risk of the dangerous condition created or permitted by the public agent. (See, for example, *Hinton* v. *State, supra,* 124 Cal.App.2d 622.) The same subdivision would bar liability where the intervening act of the third person was not reasonably foreseeable. (*Azcona* v. *Tibbs,* 190 Cal.App.2d 425 [12 Cal.Rptr. 232].) The causation element required by subdivision (a) thus turned on the foreseeability of the third person's conduct, rather than its negligent or nonnegligent character. (*Hinton* v. *State, supra,* 124 Cal. App.2d at pp. 626-629; see also *Jones* v. *City of South San Francisco,* 96 Cal.App.2d 427, 435 [216 P.2d 25].) Subdivision (e), on the other hand, turned on the character of the immediate actor's conduct, not its foreseeability. It imposed personal liability on the public agent only if the immediate actor (whether the plaintiff himself or a third person) was exercising care in using the facility. The third person might be the driver of a car in which the plaintiff was a passenger, or he might (as in this case) be the driver of another vehicle. In any case, the personal liability of the public agent was not to be dependent on the unraveling of common law rules of joint tort liability, concurrent causation or imputed negligence. Instead, subdivision (e) imposed

personal liability on the public agent only if his negligence and his alone proximately caused the accident.

◼ What we have said thus far demonstrates the *eventual* impossibility of fastening the private driver and the defendant public agents with joint liability for concurrent negligence. The exigencies of pleading and trial preceding that eventuality are another matter. Here the plaintiffs had to plead as well as prove compliance with the conditions of section 1953, subdivision (e). Thus they could not in a single count of their complaint plead concurrent negligence of Kroger and the public agents. Plaintiffs, however, could not know in advance whose negligence, if any, they might be able to prove to a jury's satisfaction. There was no reason why they could not avail themselves of the general rule permitting them to plead inconsistent causes of action in separate counts of their complaint. This general rule allows a plaintiff who is in doubt as to whether defendant A or B is liable, to plead in one count that defendant A was negligent and in a second count that defendant B and not defendant A was negligent. (*Lambert* v. *Southern Counties Gas Co.*, 52 Cal.2d 347, 352-353 [340 P.2d 608]; see 2 Witkin, Cal. Procedure, §§ 181-185, pp. 1160-1164; 1 Chadbourn, Grossman and Van Alstyne, Cal. Pleading, §§ 772-775, pp. 676-682.) The plaintiffs, Mr. and Mrs. Zeppi, were entitled to go to trial on charges of negligence against either set of defendants. The election as to which of these charges was sustained was for the jury and could not be forced upon the plaintiffs during trial. (*Tanforan* v. *Tanforan,* 173 Cal. 270, 274 [159 P. 709]; *Buck* v. *Cardwell,* 161 Cal.App.2d 830, 834 [327 P.2d 223].) It would have been error to grant defendants Beach and Waugh a nonsuit on the theory that section 1953, subdivision (e), prevented plaintiffs from going to the jury against all defendants simultaneously. Further, it would have been error to grant the nonsuit on the assumption that plaintiffs had proved Kroger's negligence as a matter of law, since the court at that juncture had no way of forecasting the jury's verdict. If the nonsuit motion had been premised on section 1953, subdivision (e), alone, it could not have been properly granted.

◼ On appeal, however, we do not face the procedural circumstances existing at the time of the nonsuit. The appeal comes before us after a jury verdict and judgment against Kroger's estate. The verdict and judgment impliedly but necessarily embodied an affirmative finding on the issue of Kroger's negligence. Plaintiffs possess a judgment which rests on that finding. The issue is now res judicata and may

not be relitigated. To be sure, Beach and Waugh were not participants in this verdict and not parties to the judgment. (See *Lyon* v. *Giannoni,* 168 Cal.App.2d 336, 340-341 [335 P.2d 690].) The doctrine of res judicata frequently extends beyond the immediate parties, however. *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892], applies it to a second and separate lawsuit, holding in effect that one may pick up the shield of an issue's prior adjudication if his own liability is dependent upon that adjudication, even though he was neither a party nor in privity with a party. There is no conceptual or policy reason why the doctrine should not apply equally to an appeal, where the issue has been finally adjudicated as between other parties to the identical lawsuit. In view of the provisions of section 1953, subdivision (e), the jury finding on the issue of Kroger's negligence exonerated Beach and Waugh. Plaintiffs may not relitigate that issue ''by merely switching adversaries'' or by assuming contradictory positions in successive lawsuits or successive trials. (*Bernhard* v. *Bank of America, supra,* 19 Cal.2d at p. 813; see 2 Freeman on Judgments (5th ed.) § 631.) Even on the assumption that the nonsuit was erroneous, a retrial could not possibly result in a judgment against Beach and Waugh. Hence the nonsuit did not cause a miscarriage of justice. (*People* v. *Watson,* 46 Cal.2d 818, 834-837 [299 P.2d 243].)

Plaintiffs suggest that the nonsuit was erroneous because, in relation to Beach and Waugh, plaintiffs were entitled to the presumption that Kroger, the decedent, was exercising due care. Kroger's negligence being finally adjudicated, the point is as moot as it can possibly be. In any event, a party may not invoke the presumption to contradict evidence of negligence which he himself produces. (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809]; *Tice* v. *Kaiser Co.,* 102 Cal. App.2d 44, 52 [226 P.2d 624].)

Since subdivision (e) of former Government Code section 1953 impels affirmance of the judgment in favor of Beach and Waugh, we do not consider whether other provisions of the same statute justified the nonsuit.

Judgment affirmed.

Pierce, P. J., and Moor, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 7, 1964.

---

*Assigned by Chairman of Judicial Council.