[Civ. No. 22919. First Dist., Div. One. Feb. 21, 1967.]

WALNUT CREEK AGGREGATES COMPANY, Plaintiff and Appellant, v. TESTING ENGINEERS INCORPORATED, Defendant and Respondent.

Condon, Dolgin & Kully, Leonard A. Kully, Robert L. Condon and Howard Jameson for Plaintiff and Appellant.

Hall, Henry, Oliver & McReavy and Lee H. Cliff for Defendant and Respondent.

ELKINGTON, J.—Appellant Walnut Creek Aggregates Company, plaintiff below, appeals from a judgment of dismis-

sal entered upon the granting of a nonsuit on the motion of respondent Testing Engineers Incorporated, one. of the defendants before the lower court, which will hereinafter be called defendant. The other defendant, Diamond Building Materials, Inc., a corporation, is not a party to this appeal.

We have concluded that the granting of such judgment of dismissal was error.

■ We state the facts, as we must, in a light most favorable to the plaintiff. (*Raber* v. *Tumin,* 36 Cal.2d 654 [226 P.2d 574]; *Bristow* v. *Brinson,* 212 Cal.App.2d 168 [27 Cal.Rptr. 796]; *Bunch* v. *Henderson,* 167 Cal.App.2d 112 [333 P.2d 813].)

Samson Construction Company (Samson), a general contractor, was in 1962 engaged in making certain structural additions to a high school in Contra Costa County. Plaintiff Walnut Creek Aggregates Company had contracted with Samson to supply ready-mix concrete as it was needed for the job. Defendant was hired by the school district to prepare a concrete mix design in accordance with the architect's specifications and to perform continuous batch plant inspections at plaintiff's plant during mixing. The specified concrete mix design called for a liquid admixture called WRDA in an amount of 31.5 ounces for each cubic yard of concrete. WRDA is a water reducing agent which is supplied in 55 gallon metal barrels or drums. It causes the concrete to flow better and to be more workable, while reducing the water content and building up the concrete's strength.

On April 13, 1962, plaintiff had used up its supply of WRDA. As some was needed for that day's mix of concrete for the high school, John Brohman, vice-president and general manager of plaintiff, called Pacific Coast Aggregates. That supplier said that it had WRDA in stock. Mr. Brohman then told his son, and plaintiff's employee, George Brohman (George), that some WRDA was needed in a hurry and directed him to pick it up.

George, who worked for plaintiff in a sales capacity, had little knowledge of concrete additives. He drove to Pacific Coast Aggregates only to find that in fact they had no WRDA. He then telephoned another supplier, defendant Diamond Building Materials (Diamond), and was told that it had the needed additive. George then drove to Diamond's warehouse. As a drum was there being loaded into plaintiff's station wagon, George noticed that the drum had some letter-

ing on it which said something other than WRDA. He advised
Diamond's employee that the drum did not "say WRDA on
it." Diamond's employee said "It's the same thing but a
different label." George accepted the barrel and drove to
plaintiff's mixing plant where it was placed on the rack
where WRDA was customarily kept. The contents of the drum
were on April 13, 1962, used in mixing eight truckloads of
concrete which were delivered and poured at the school job.
George informed no one that he had been told by Diamond's
warehouseman that the drum contained the same thing as
WRDA, but that it was under a different label.

Some time later tests at the school site showed the April
13th pour of concrete not to meet specifications. An investiga-
tion disclosed that the substance obtained from Diamond and
used on April 13, 1962, was not WRDA, but instead MBVR, a
concrete additive used as an air-entraining agent. This agent
causes millions of microscopic air bubbles which makes con-
crete less strong but more resistant to freeze-thaw cycles.
However, MBVR, if used in proper proportions would
"probably have pretty near the same effect" as WRDA.

The defective concrete was removed. Samson sued plaintiff
(in another action) and recovered judgment for $27,038.31
less plaintiff's counterclaim of $8,490.64.

Defendant's trained inspector at plaintiff's plant was
familiar with the additives WRDA and MBVR, and knew the
distinction between an air-entraining agent and a water-
reducing agent. WRDA is (and at the time in question, was)
furnished in drums with distinctive coloring. Strips around
the side of the drum at the top and at the bottom are painted
gray. Another strip of equal width, around the center is
painted red. On the top gray strip is a label approximately 6
inches by 10 inches, with the lettering WRDA in red upon a
white background. On the other hand, the MBVR drum in
question was black with a white front on it. It was quite dirty
but there was some printing on one end that had the initials
MBVR. The initials were black over white and they were
faded and illegible.

Plaintiff had a "batch man" at the plant whose duty it
was to weigh, measure and mix the various ingredients of the
concrete. The only contractual duty of defendant's inspector
at the plant was to see that the right admixture was put into
the truck. However, the inspector customarily, before, on and
after April 13, 1962, pointed out to plaintiff's drivers the

drum from which they should draw WRDA. He would say, pointing to the drum ''Here's your WRDA.'' He did this on April 13, 1962, when the drum actually contained MBVR. The inspector would frequently himself draw the additive from the drum, then hand it to the driver who would climb to the top of the truck and pour it in. A driver testified that during the period in question the inspector customarily took the additive from the barrel, and that he (the driver) did not even look for labels on the barrel because he figured the inspector knew what he was doing.

From the foregoing a jury might reasonably have found defendant to be negligent and that such negligence was a proximate cause of injury to plaintiff.[1]

At the trial below, plaintiff based its claim on defendant's negligence. At the close of plaintiff's case defendant Testing Engineers moved for the nonsuit on the ground that there had been no showing of a duty owed by defendant to the plaintiff. Considerable discussion followed, during the course of which the court stated that it thought the motion to be good on the ground stated, and also on the ground that there was contributory negligence as a matter of law. During the following discussion defendant Diamond, which had also moved for a nonsuit, added as an additional ground for its motion, contributory negligence as a matter of law. Plaintiff had adequate opportunity to ask leave to cure any evidentiary deficiency as to contributory negligence but did not do so. The court then granted defendant Testing Engineers' motion for nonsuit against plaintiff on the ground that defendant owed no duty to the plaintiff, and on the further ground that plaintiff was guilty of contributory negligence as a matter of law.

█ Plaintiff first contends that the evidence reasonably supports a finding that while defendant was under no contractual or other duty to participate in the mixing of the concrete in question it nevertheless did voluntarily and gratuitously so participate. Having done so, plaintiff insists defendant was under a duty to exercise ordinary care with regard to plaintiff, and to plaintiff's intangible property.

From the evidence it could reasonably be concluded by the jury that defendant, through its inspector, did gratuitously

---

[1]In referring in this opinion to the range of permissible findings or inferences which could be drawn by the court or jury, this court of course expresses no opinion as to the weight of evidence or whether such inference should be drawn.

assume the task of actively participating in the mixing of the concrete batches in question.

It seems clear that a duty of ordinary care *may* arise out of a voluntarily assumed relationship. (*Merrill* v. *Buck,* 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304]; *Silva* v. *Providence Hospital of Oakland,* 14 Cal.2d 762, 775 [97 P.2d 798]; *Johnston* v. *Orlando,* 131 Cal.App.2d 705, 708-709 [281 P.2d 357]; *Valdez* v. *Taylor Automobile Co.,* 129 Cal.App.2d 810, 817 [278 P.2d 91]; Prosser, Torts, § 54, pp. 339-343 (3d ed. 1964); 2 Harper and James, Torts, § 18.6, pp. 1044-1053; 2 Witkin, Summary of Cal. Law (1960) Torts, § 241, pp. 1436-1437; Cal. Jury Instns., Civ. (4th rev.ed. 1956) No. 101-G; Rest.2d Torts, § 323.) But such a duty is not absolute. It will exist only where required by public policy.

In *Merrill* v. *Buck, supra,* 58 Cal.2d 552, 561, the court stated: "Privity of contract is not necessary to establish the existence of a duty to exercise ordinary care not to injure another, but such duty may arise out of a voluntarily assumed relationship if public policy dictates the existence of such a duty." For the guidelines in determining the public policy as to a given case the court referred to *Biakanja* v. *Irving,* 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]. In that case (p. 650) the court stated: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm."

Additional criteria for determination of public policy in cases such as that before us, are discussed in *Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal.2d 295, 309-315 [29 Cal.Rptr. 33, 379 P.2d 513], and *Raymond* v. *Paradise Unified School Dist.,* 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]. (See also *Stewart* v. *Cox,* 55 Cal.2d 857, 863 [13 Cal.Rptr. 521, 362 P.2d 345]; *Stromer* v. *City of Yuba City,* 225 Cal.App.2d 286, 289-292 [37 Cal.Rptr. 240]; *M. Miller Co.* v. *Dames & Moore,* 198 Cal.App.2d 305, 309 [18 Cal.Rptr. 13]; *Burke* v. *Zanes,* 193 Cal.App.2d 773, 777 [14 Cal.Rptr. 619].)

The determination of whether a duty of care exists is (at

least in the first instance) a question of law for the court.[2] (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295, 307-308; *Richards* v. *Stanley,* 43 Cal.2d 60, 67 [271 P.2d 23]; *Calandri* v. *Ione Unified School Dist.,* 219 Cal.App.2d 542 [33 Cal.Rptr. 333]; *Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1, 7; Prosser, Torts (3d Ed. 1964) § 89, p. 607; 2 Harper and James, Torts, § 18.8, p. 1058; Rest.2d Torts, § 328 B.)

Defendant contends also that there can be no duty of care, in the absence of privity, as to the "intangible [pecuniary] interests" of plaintiff. We do not find this to be the law. The nature, and closeness or remoteness, of the injury are elements of the criteria to be considered in determining the existence of a duty. *Biakanja, supra,* lists among. the factors to be considered, "the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the defendant's conduct and the injury suffered. . . ." (49 Cal.2d 650.) And *Biakanja* itself allowed recovery (in the absence of privity) for harm to the "intangible interests" of the plaintiff in that case. Defendant cites, and we find, no authority stating that an intangible property interest is wholly excluded from protection from negligent injury.

In its briefs, and on oral argument, defendant repeatedly refers to such matters as its duty being only to the school district under its contract, and to the end and aim of that contract. We consider defendant's relationships and obligations under the school district contract to be collateral, incidental and probably irrelevant (except as to the public policy criteria we have discussed) to the issues before us. A duty of ordinary care may arise out of a voluntarily assumed relationship whether or not it be based on, or related to, a contractual duty. (*Merrill* v. *Buck, supra,* 58 Cal.2d 552, 561.)

We have weighed the pertinent policy considerations of this case in the light of the evidence before us and the criteria announced by *Biakanja, supra,* 49 Cal.2d 647, *Amaya, supra,* 59 Cal.2d 295, and *Raymond, supra,* 218 Cal.App.2d 1. We conclude that the lower court could, and should, at least as to defendant's motion for nonsuit, have found evidence sufficient to establish a duty of care owing from defendant to plaintiff.

[2] "Occasions for judicial determination of a duty of care are infrequent, because in 'run of the mill' accident cases the existence of a duty may be—and usually is—safely assumed." (*Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1, 9.)

 Plaintiff's next contention is that the trial court erred in granting the nonsuit on the additional ground of contributory negligence as a matter of law. First it is urged that as this ground was not stated in the motion, under the rule expressed in *Lawless* v. *Calaway*, 24 Cal.2d 81, 94 [147 P.2d 604], it may not be a basis for a nonsuit. Secondly it is argued that the evidence in this case does not establish contributory negligence of plaintiff as a matter of law.

As to plaintiff's second point we are in agreement. Plaintiff (as a principal charged with the knowledge of its agent) did not know, as defendant contends in its briefs, that George Brohman had been given the "wrong admixture." Plaintiff's imputed knowledge was no more than that George had been told that it was "the same thing but a different label." The jury could have considered, were they allowed, that plaintiff might reasonably have relied upon the trained inspector to detect any improper substance. They might have found it not to be negligence to accept what was believed to be the same thing as WRDA under a different label. Certainly, under the rules we must, and do, follow—that evidence must be considered in the light most favorable to plaintiff—we cannot say that a reasonable mind could draw only the conclusion of contributory negligence.

 Even though plaintiff's case may appear dubious to a reviewing court, the functions of the jury must be respected. (*Bristow* v. *Brinson, supra,* 212 Cal.App.2d 168, 172.) *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826], states: ". . . certain rules must be remembered. The burden of proving contributory negligence is upon the defendant. [Citation.] True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion.''

Our disposition of the contributory negligence issue makes it unnecessary in a determination of this cause to pass upon plaintiff's contention that contributory negligence was not urged as a basis for the nonsuit.

■ Finally defendant urges that since the jury found in favor of defendant Diamond, the doctrines of res judicata and collateral estoppel apply against plaintiff on this appeal. *Zeppi* v. *Beach*, 229 Cal.App.2d 152 [40 Cal.Rptr. 183] is offered as authority. In that case suit was brought against the estate of Leo Kroger charging negligent driving by Kroger and against certain Division of Highway officials charging negligent maintenance of a highway. A nonsuit was granted as to the highway officials but denied as to Kroger's estate, against which the jury later returned a verdict. Zeppi appealed from the judgment of nonsuit. The appellate court held that under Government Code section 1953 (now repealed), the determination of Kroger's negligence by the jury was impliedly and *necessarily* a finding that the highway officials were not liable.[3] The issue as to the highway employees was held to be res judicata and not to be relitigated even though such officials, after their judgment of nonsuit, were not participants in the verdict nor parties to the ensuing judgment.

If the issue, as to which collateral estoppel or res judicata is claimed, is one which had to be determined by the jury in order to arrive at their verdict for Diamond, the consequent judgment (under *Zeppi, supra*), would appear to be binding on plaintiff. On the other hand, if the issue was not one which the jury had to decide in order to arrive at their verdict, then it is not possible to say that this issue has in fact been determined one way or the other and there is neither res judicata nor collateral estoppel with regard to it. (See *Horton* v. *Goodenough*, 184 Cal. 451, 460 [194 P. 34]; *Albertson* v. *Raboff*, 46 Cal.2d 375, 384-385 [295 P.2d 405]; 3 Witkin, Cal. Procedure (1954) Judgment, § 62, p. 1947 et seq.)

In the case at bench the jury might possibly have found, consistently with its verdict for Diamond, that plaintiff was

---

[3]Section 1953, Government Code, authorized liability on certain state officials for damage or injury to any person (upon certain conditions) from defective or dangerous condition of a state highway if sustained while the highway ''was being carefully used, and due care was being exercised to avoid danger due to such condition.'' *Zeppi, supra,* construed this language to allow recovery only if all parties to the accident (other than the highway officials) were properly using the highway and exercising due care to avoid danger due to the conditions of the highway.

not negligent in accepting what it believed to be the same thing under a different label, or that the only negligence consisted in defendant's inspector not mixing the MBVR in the proper proportions, or that Diamond's sale of MBVR was not the proximate cause of plaintiff's damages, there being an unforeseeable causative intervening agency, or simply that there was no negligence as to either Diamond or plaintiff. Certainly it cannot be said that the jury's verdict *necessarily* imputes negligence or contributory negligence to plaintiff.

Accordingly the judgment of dismissal appealed from is reversed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied March 13, 1967, and the opinion was modified to read as printed above.