Filed 8/10/21  Wickander v. Cal. Dept. of Transportation CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DANIELLE WICKANDER et al., | B301808 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC664489) |
| v. | |
| CALIFORNIA DEPARTMENT OF TRANSPORTATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Marc D. Gross, Judge.  Affirmed.

Paoli & Purdy and Court B. Purdy for Plaintiffs and Appellants.

Erin E. Holbrook, Jeanne E. Scherer, Chief Counsel, Jerald M. Montoya, Deputy Chief Counsel, and Mark Berkebile, for Defendant and Respondent.

_____

A driver negligently hit pedestrians plaintiffs and appellants Spencer Wickander (through his mother, Danielle Wickander) and Tailor Heer as they attempted to cross State Route 1, Pacific Coast Highway (PCH), in Malibu, from the beach side to the inland side where their vehicle was parked. They sued defendant and respondent California Department of Transportation (CalTrans) for dangerous condition of public property under Government Code section 835. CalTrans successfully moved for summary judgment, and plaintiffs appeal.

Because the trial court properly granted CalTrans's motion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

### A. The Accident

At approximately 5:22 p.m. on July 2, 2016, plaintiffs were crossing PCH in Malibu when they were struck by a vehicle driven by Adabelle Ekechukwu (Ekechukwu). They were returning from the beach to their car, which was parked on the inland side of PCH. Tragically, Spencer Wickander was killed, and Tailor Heer was injured.

The accident occurred during daylight.

### B. The Accident Location

PCH at the accident location is a four-lane conventional highway, with two northbound and two southbound lanes, separated by a two-way left turn lane. Parking is prohibited on the ocean side and permitted on the inland side.

### C. No Prior Accidents or Complaints

From January 1, 2008, through July 2, 2016, approximately 46,188,500 vehicles traveled through the accident location.

During that time, there is no record of any vehicle-versus-pedestrian accidents other than the instant one.

Furthermore, CalTrans uses the Traffic Accident Surveillance and Analysis System to identify highway segments that have a higher-than-average number of accidents. If a location has a higher-than-average number of accidents, a safety investigation is triggered. From January 1, 2005, through June 30, 2016, the accident location was never identified as having a higher-than-average number of accidents, meaning that "this section of roadway is performing as expected and consistent with other similar facilities of this type."

Finally, there is no record of any complaints from private citizens, law enforcement, or local public entities about the dangers posed to pedestrians crossing PCH at the accident location.

D. Subsequent Safety Enhancements

Following the accident, CalTrans discussed additional safety measures that could be installed. After considering and ruling out a crosswalk with flashing beacons, CalTrans decided to prohibit parking on the inland side of PCH near the accident location.

*Procedural Background*

A. The Complaint

On June 9, 2017, plaintiffs initiated this lawsuit against CalTrans. They filed their first amended complaint, the operative pleading, on August 7, 2018. They alleged that PCH at the accident location was a dangerous condition of public property because the inland side shoulder where plaintiffs parked did not meet the minimum shoulder-width requirements. As a

result, plaintiffs asserted that CalTrans should have prohibited public parking at that location.

In addition, plaintiffs alleged that PCH at this location lacked adequate roadway markings and warnings, lacked a refuge island in the middle of PCH, and lacked adequate parking on the ocean side of the highway.

Finally, plaintiffs alleged that Ekechukwu's negligent, reckless, and unlawful behavior directly and proximately caused the accident.

B. CalTrans's Motion for Summary Judgment

On April 9, 2019, CalTrans filed its motion for summary judgment. It argued: (1) the accident location was not a dangerous condition of public property as a matter of law; (2) CalTrans did not have actual or constructive notice of a dangerous condition of public property; and (3) CalTrans is immune from liability pursuant to the theory of design immunity. In support, CalTrans offered three supporting declarations, including an expert declaration from a civil engineer.

C. Plaintiffs' Opposition

Plaintiffs opposed CalTrans's motion. They argued, inter alia, that CalTrans's motion should be denied because (1) it failed to address multiple factual allegations in the first amended complaint, (2) there were multiple triable issues of material fact, and (3) design immunity did not apply.

In support, they offered a competing expert declaration. Their expert measured the shoulder width as less than eight feet. Notably, the expert relied in part upon a parking study conducted by Stantec, a private engineering firm, nearly one year after the subject accident. Stantec had measured the shoulder widths

4

along PCH and found that they were less than eight feet near the subject location and recommended that parking be eliminated.

Plaintiffs' expert also noted that the May 7, 2012, edition of CalTrans's Highway Design Manual,[1] provided that "'[w]here on-street parking is allowed, 10 feet shoulder width is preferred.'" He further noted the lack of pedestrian facilities on the inland side of PCH. There was no buffer to provide space for pedestrians to exit parked vehicles, and at the time of the accident, there were no signs warning motorists of crossing pedestrians.

Plaintiffs' expert agreed that there was no history of pedestrian-versus-vehicle accidents at the subject location. But, he did point to two accidents (one in 2013 and one in 2014) that occurred approximately one mile north of the subject location.[2] Ultimately, plaintiffs' expert opined that "allowing parking, pedestrian travel, and pedestrian crossings along [PCH] with a substandard shoulder, high vehicular volumes and speeds, placed pedestrians, such as the Plaintiffs, going to and from [the beach] at a significant risk of foreseeable injury."

Also in support of their opposition, plaintiffs' counsel offered a declaration, attached to which were 25 exhibits. Exhibits 5 and 6 were identified as "Various Emails to CALTRANS . . . re: safety issues on subject roadways." One e-mail was sent in 2015, from Arthur Aladjadjian of the City of

---

[1] During discovery, a CalTrans engineer testified at his deposition that the applicable CalTrans Highway Design Manual calls for an eight-foot shoulder for parking.

[2] Both accidents occurred at night, and the pedestrians struck had either been drinking or were intoxicated.

Malibu to CalTrans stating: "Please see emails below regarding the line of sight concerns when exiting onto PCH from" the beach. He suggested installing additional "no parking" signs near the driveway entrance to make clearer that parking was prohibited near the driveway. And, on February 15, 2016, Alcal Tuyet of the Los Angeles County Sheriff's Department sent an e-mail to the City of Malibu (and the e-mail was eventually provided to CalTrans) noting that cars exiting the beach "had to stick their cars so far out in the roadway to see past the cars parked close to the driveway." According to plaintiffs, these e-mails put CalTrans on notice of visibility issues at the subject location, which were relevant in light of Ekechukwu's deposition testimony that she was distracted by people and vehicles coming and going from that particular beach area.

In addition, plaintiffs' counsel attached a safety study to his declaration, which plaintiffs contended created a triable issue of fact as to whether CalTrans had received any safety complaints at the accident location.

D. Trial Court Order Granting Motion for Summary Judgment

After entertaining oral argument, the trial court granted CalTrans's motion for summary judgment. In so ruling, the trial court first noted plaintiffs' procedural errors in their opposition. It then turned to the merits of CalTrans's motion.

The trial court found it undisputed that (1) there was no history of vehicle-versus-pedestrian accidents at the subject location; (2) the accident location had never been identified as a high-accident location; (3) there was no evidence of visibility or unusual roadway conditions that made the subject location unsafe for pedestrians; and (4) CalTrans had not received any

6

safety-related complaints about the subject location. Furthermore, plaintiffs did not exercise due care or use the subject roadway in a foreseeable manner; they crossed PCH outside of a marked crosswalk, in violation of the Vehicle Code.

Thus, CalTrans met its burden of showing that plaintiffs could not establish two essential elements of dangerous condition liability:  the existence of a dangerous condition or property, and notice of such condition.

After specifically noting that CalTrans was not required to disprove every allegation in plaintiffs' operative pleading, the trial court next found that plaintiffs failed to raise a triable issue of material fact.  It found plaintiffs' evidence of the two prior accidents, the Stantec parking studies, and e-mails regarding parking and visibility inadmissible.  And, even if it were admissible, the evidence did not create a triable issue of fact. First, the two prior accidents did not occur under the same or similar circumstances—they occurred at a different location, at night, and involved intoxicated pedestrians.  Second, the Stantec reports did not verify the information received by others, and one of the studies was not published until after the subject accident. While the report recommended making a 21-mile section of PCH safer, the trial court noted that public property is not a dangerous condition simply because it can be made safer.  And third, the various e-mails were irrelevant or immaterial to the issue of notice of the particular dangerous condition alleged here. None of the e-mails concerns pedestrians crossing PCH.

Finally, the trial court rejected plaintiffs' contention that because the shoulder width was less than eight feet wide, CalTrans should have prohibited parking at the location, and had parking been prohibited, plaintiffs would not have parked there

and would not have been struck while crossing PCH to return to their parked vehicle.  The trial court recognized that the shoulder width of the side of the highway where plaintiffs had parked was not causally connected to the accident.[3]

E. <u>Judgment and Appeal</u>

Judgment was entered, and this timely appeal ensued.

**DISCUSSION**

I. *Standard of review*

"We review a grant of summary judgment de novo, considering "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence."' [Citation.] 'In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue.' [Citation.]" (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.)

"The general rule is that summary judgment is appropriate where 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .' [Citation.]  A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.]  The moving

---

[3] The trial court did not reach the issue of design immunity.

8

defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense thereto.  [Citations.] "'[A]ll that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . [;] the defendant need not himself conclusively negate any such element . . . ." [Citation.]' [Citation.]  Once the moving party's burden is met, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact.  [Citation.]  The plaintiff must produce "'*substantial*'" responsive evidence sufficient to establish a triable issue of fact.  [Citation.] '[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.' [Citation.]" (*Granadino v. Wells Fargo Bank, N.A.*, *supra*, 236 Cal.App.4th at p. 415.)

In reviewing an order granting summary judgment, we strictly scrutinize the moving party's papers (*Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 549, overruled in part on other grounds by *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245), and liberally construe the declarations of the party opposing summary judgment to determine the existence of triable issues of fact.  (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1556.)  All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment.  (*Ibid.*)

We affirm an order granting summary judgment if it was correct on any ground that the parties had an adequate opportunity to address in the trial court.  (*Securitas Security*

9

*Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.)

II. *Relevant law*

    A. <u>Dangerous Condition</u>

    "'Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' ([Gov. Code,] § 835.)" (*Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532, 539–540.)

    A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830, subd. (a).) Stated another way, "[a]ny property can be dangerous if used in a sufficiently abnormal manner; a public entity is required only to make its property safe for reasonably foreseeable careful use. [Citation.]" (*Mathews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1384; see also *Fuller v. State of California* (1975) 51 Cal.App.3d 926, 940 ["'a public entity should not be liable for injuries resulting from the use of a highway—

10

safe for use at 65—at 90 miles an hour, even though it may be foreseeable that persons will drive that fast'"].)

"'[A] claim alleging a dangerous condition may not rely on generalized allegations [citation] but must specify in what manner the condition constituted a dangerous condition.' [Citation.]  A plaintiff's allegations, and ultimately the evidence, must establish a *physical* deficiency in the property itself. [Citations.]  A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users.  [Citation.]" (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347–1348.)

"A condition is not a dangerous condition . . . if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."  (Gov. Code, § 830.2.)

In determining "whether a given condition of public property is minor or insignificant as a matter of law," we "consider both the physical description of the condition, and 'whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract [description] would indicate.'  [Citation.] Where appropriate, the court should consider not only the

11

intrinsic nature and quality of the condition, but also other factors such as the time and place of the occurrence.  [Citation.] 'Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect.'  [Citation.]" (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 234.)

Although the question of whether a dangerous condition exists is often one of fact, the issue may be resolved as a question of law when reasonable minds can only draw one conclusion from the facts.  (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1194.)  In other words, "'[i]t is for the court to determine whether, as a matter of law, a given defect is not dangerous.'"  (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704.)  "This is to guarantee that [public entities] do not become insurers against the injuries arising from trivial defects." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734.)

B.  Causation

"An essential element of a cause of action for damages based on a dangerous condition of public property is causation" and "the issue can be decided as a matter of law where the facts of a case can permit only one reasonable conclusion."  (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 8–9; see also *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1135 ["liability is imposed only when there is some defect in the property itself and a causal connection is established between the defect and the injury"].)  To establish causation, the plaintiff must present evidence that "the defendant's conduct was a 'substantial factor' in bringing about his or her harm."  (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312.)

C. <u>Notice</u>

A public entity had actual notice of a dangerous condition "if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." (Gov. Code, § 835.2, subd. (a).) A public entity had constructive notice of a dangerous condition "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. . . ." (Gov. Code, § 835.2, subd. (b).)

III. *The trial court did not err in granting CalTrans's motion for summary judgment*

Applying these legal principles, we conclude that the trial court did not err in granting CalTrans's motion for summary judgment.[4] As the trial court aptly noted, the following facts were undisputed: (1) There was no history of vehicle-versus-pedestrian accidents at the subject location;[5] (2) the accident location had never been identified as a high-accident location; (3) there was no evidence of visibility or unusual roadway conditions that made the subject location unsafe for pedestrians; and (4) CalTrans had not received any safety-related complaints about the subject location. Under these circumstances, there was

---

[4]    We reach this conclusion without considering CalTrans's alternative argument pursuant to the doctrine of design immunity.

[5]    As set forth above, the other two accidents are readily distinguishable. They occurred at a different location, at night, and involved persons who either were intoxicated or had been drinking.

13

no dangerous condition prompting liability under Government Code section 835.

Perhaps more significantly, plaintiffs have not, and cannot, demonstrate causation. Plaintiffs contend that CalTrans's failure to construct the inland shoulders at least eight feet wide and then not prohibiting parking created a dangerous condition of property. Their theory seems to be that had parking been prohibited because of the narrow shoulders, plaintiffs would not have parked there and would not have been struck by a vehicle while crossing PCH from the beachside back to the inland side where their car was parked. We are not convinced. Even if CalTrans permitted vehicles to park on a narrow shoulder, and therefore arguably invited pedestrians to cross PCH, there is no evidence that this "increased or intensified the danger" to pedestrians using due care.[6] (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at pp. 1136, 1138.) And, as pointed out by CalTrans, had the shoulders been eight feet or wider, CalTrans guidelines would have permitted parking. In this scenario, plaintiffs presumably would have parked in the same location and would still have crossed PCH. Thus, the width of the shoulder (the alleged defect) has no causal relationship to being struck by a vehicle while crossing PCH.

Finally, it is undisputed that CalTrans did not have notice of the alleged dangerous condition. There were no prior similar accidents at the subject location, and the subject location was never identified as an area of concern. There also were no complaints from private citizens, law enforcement, or local public

---

[6] For this reason, the fact that there may have been inadequate parking on the beachside of PCH is irrelevant.

entities about the alleged danger posed to pedestrians crossing PCH at the subject location. While CalTrans may have been aware that parking had been permitted on the inland side of PCH, as set forth above, that alone is insufficient because the width of the shoulder on the inland side of PCH is not causally connected to the type of accident that occurred here.

Urging us to reverse, plaintiffs assert that the motion should have been denied because it failed to refute each and every factual allegation set forth in the first amended complaint. We are not convinced. While the pleadings certainly frame the issues for a summary judgment motion, plaintiffs offer no legal authority in support of their contention that CalTrans was required to refute every factual allegation in their first amended complaint. In fact, because CalTrans sought summary judgment on the grounds that plaintiffs could not prove their claim against it, all CalTrans had to do was negate at least one element of plaintiffs' claims. Here, as set forth above, it successfully negated three different elements of plaintiffs' cause of action. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.)

Plaintiffs further argue that the trial court abused its discretion in sustaining CalTrans's evidentiary objections to plaintiffs' expert's declaration.[7] We need not address this issue. As set forth above, CalTrans offered undisputed evidence that the shoulder width of PCH at the accident location did not constitute

---

[7] Notably, plaintiffs largely argue that their expert's opinion testimony should have been admitted because it pertained to CalTrans's contention that it was immune from liability pursuant to the design immunity doctrine. Like the trial court, we need not reach this issue.

15

a dangerous condition as a matter of law, and even if it did, (1) that condition was not causally connected to plaintiffs' accident, and (2) CalTrans did not have notice of that condition. Nothing in plaintiffs' expert's declaration refutes the foregoing. And, his opinion that the shoulder width constituted a dangerous condition is insufficient to create a triable issue of material fact. (*Davis v. City of Pasadena*, *supra*, 42 Cal.App.4th at p. 705 ["the fact that a witness can be found to opine that a condition constitutes a significant risk and a dangerous condition does not eliminate this court's statutory task, pursuant to [Government Code] section 830.2, of independently evaluating the circumstances"].)

In addition, plaintiffs argue that the trial court erred in relying upon Evidence Code section 1151[8] and not considering the fact that CalTrans took remedial steps after the accident. We agree that the evidence was barred pursuant to Evidence Code section 1151. Moreover, plaintiffs ignore Government Code section 830.5, subdivision (b), which provides, in relevant part, "'[t]he fact that action was taken after an injury occurred to protect against a condition of public property is not evidence that the public property was in a dangerous condition at the time of the injury.'" (See also *Moritz v. City of Santa Clara* (1970) 8 Cal.App.3d 573, 577.) And, in any event, the fact that public property can be made safer is not a proper basis for deeming the

---

[8] Evidence Code section 1151 provides, in relevant part, that "[w]hen, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the evidence."

16

existing condition dangerous.  (*Dole Citrus v. State of California* (1997) 60 Cal.App.4th 486, 494.)

In addition, plaintiffs seem to argue that Ekechukwu's testimony that there were visual distractions at the subject location creates a triable issue of fact that the accident location constituted a dangerous condition.  According to plaintiffs, her testimony is consistent with e-mails which purportedly put CalTrans on notice of the alleged dangerous condition.  We are not convinced.  The problem with plaintiffs' contention is that the subject e-mails did not address the dangerous condition alleged in this case—they did not address pedestrians crossing PCH.  Instead, they addressed multiple locations and unrelated issues, such as faded or missing no-parking signs, cars parking too close to a driveway on the ocean side of PCH, and visibility with respect to vehicles attempting to exit the parking lot at the beach.

Finally, plaintiffs argue that the trial court erred in considering the negligence of Spencer Wickander and Tailor Heer.  Plaintiffs correctly point out that the law does not require a plaintiff to prove that the property was actually being used with due care at the time of his injury.  (*Alexander v. State of California ex rel. Dep't of Transportation* (1984) 159 Cal.App.3d 890, 899.)  While the trial court noted in its order that plaintiffs did not exercise due care, that was not the basis of the trial court's conclusion.  And it has no bearing on our de novo analysis here.

**DISPOSITION**

The judgment is affirmed.  CalTrans is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT


18